# Illinois Official Reports

## Appellate Court

---

### *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293

---

| | |
|---|---|
| Appellate Court Caption | STEVE JIOTIS, Plaintiff-Appellee, v. THE BURR RIDGE PARK DISTRICT and JOHN DOE, an Unidentified Agent or Employee of the Burr Ridge Park District, Defendants-Appellants (Edward F. Dutton, Contemnor-Appellant). |
| District & No. | Second District<br>Docket No. 2-12-1293 |
| Filed<br>Rehearing denied | January 22, 2014<br>March 5, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiff suffered at a festival sponsored by defendant park district when the step stool he was using to board a hay wagon for a ride collapsed, the trial court properly continued the proceedings on defendants' motion for summary judgment in order to allow plaintiff to conduct discovery prior to responding to defendants' motion, and on appeal from the contempt order entered against defendants for refusing to comply with the discovery plaintiff requested, the contempt order was vacated contingent upon defendants' compliance, since the record showed that defendants had not disclosed the name of the person who was directly involved in plaintiff's use of the step stool that failed, that lack of information precluded plaintiff from properly responding to defendants' summary judgment motion, and under the circumstances, the trial court had the discretion to continue the proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 11-L-1053; the Hon. Patrick J. Leston, Judge, presiding. |
| Judgment | Vacated and remanded. |

| | |
|---|---|
| Counsel on Appeal | Joseph M. Gagliardo, Gregory R. James, and David A. Moore, all of Laner Muchin, Ltd., of Chicago, and Edward F. Dutton, of Park District Risk Management Agency, of Lisle, for appellants. |
| | Stephen A. Rehfeldt, of Mulherin, Rehfeldt & Varchetto, P.C., of Wheaton, for appellee. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion. Justices McLaren and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendants, the Burr Ridge Park District (Park District) and John Doe, and their counsel, contemnor Edward F. Dutton,[1] appeal the trial court's October 3, 2012, order (the discovery order) continuing their summary judgment motion in order for plaintiff, Steve Jiotis, to conduct discovery prior to responding to their motion. Defendants appealed this order under Illinois Supreme Court Rule 304(b)(5) (eff. Feb. 26, 2010), after the trial court granted their motion to be held in civil contempt for refusal to comply with the discovery order. Defendants appeal the contempt order and argue that plaintiff violated Illinois Supreme Court Rule 137 (eff. July 1, 2013). For the reasons stated herein, we determine that the trial court did not abuse its discretion in entering the discovery order. We do not address defendants' Rule 137 argument, because it is not properly before us. Further, we vacate the contempt order and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3    Defendants appeal from a civil contempt order entered at their behest. The facts of this case are relatively simple, owing to the fact that the dispute before us is over obedience versus abeyance of the discovery order before consideration of defendants' motion for summary judgment. The limited facts and procedural history are as follows.

¶ 4    On September 13, 2011, plaintiff filed his initial complaint against the Park District and John Doe, seeking compensation for an injury sustained at a hayride sponsored by the Park District at its annual Harvest Fest in September 2010. The complaint alleged that the injury occurred as the result of negligence, that is, for patrons to enter and exit the hay wagon, the Park District provided an unmaintained and unsafe step stool, which broke when plaintiff exited the wagon, proximately causing his injury. The complaint alleged that John Doe, as an agent of the Park District, operated the wagon and instructed plaintiff to use the step stool to

---

[1]For purposes of this disposition, "defendants" refers to the Park District, John Doe, and Dutton.

exit the wagon. The Park District admits in its brief that John Doe was the wagon driver and directed passengers to use the step stool to enter and exit the wagon, although it has yet to provide his identity.

¶ 5 On October 7, 2011, the Park District moved to dismiss the complaint. The Park District argued in part that it was immune from liability for allegations of mere negligence under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-106 (West 2010)). On January 5, 2012, plaintiff then filed his first amended complaint, in which he pled two counts: one alleging negligence and the other alleging willful and wanton misconduct. The first amended complaint read similarly to the original complaint. In it, plaintiff alleged that the step stool that the Park District instructed patrons to use to enter and exit the wagon was "rusted and physically damaged in areas visible to JOHN DOE, and more particularly structurally unsound because of the visible rust and other physical damage." Plaintiff continued that the step stool collapsed at the left front joint of the first step, sending him plummeting to the ground and thus causing his injury. On February 23, 2012, defendants filed a combined motion to dismiss the first amended complaint under sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2010)).

¶ 6 On July 11, 2012, the trial court entered an order granting the motion in part and denying it in part. The trial court dismissed plaintiff's negligence count because it found that the Tort Immunity Act precluded a negligence action. Regarding the count alleging willful and wanton misconduct, the court found, "the willful and wanton [count] is sufficiently pled to stand, although we could revisit it in a motion for summary judgment."

¶ 7 On July 30, 2012, defendants filed a motion for summary judgment on the remaining willful and wanton count. Defendants argued that: (1) because the Park District had not experienced prior problems with the step stool, plaintiff could not establish actual or constructive notice of a defect; (2) a spontaneous collapse of the step stool, without any evidence of prior complaints or similar occurrences, could not constitute willful and wanton misconduct, as a matter of law; and (3) the Park District had absolute immunity from liability under sections 2-109 and 2-201 of the Tort Immunity Act (745 ILCS 10/2-109, 2-201 (West 2010)) because it exercised discretion in its use of the step stool.

¶ 8 Defendants attached the affidavit of James Pacanowski, executive director of the Park District, to the motion for summary judgment. In his affidavit, Pacanowski stated as follows. He had been employed with the Park District for 16 years, and he was familiar with Harvest Fest and the step stool used for patrons to step on and off the hayride wagons. He admitted that the Park District owned the step and operated the Harvest Fest event and that Park District volunteers and employees operated activities and attractions at the event, including the hayride. They assisted patrons as needed in entering and exiting the wagons. To the best of his knowledge, the step stool was operating properly and exhibited no signs that any of the legs would suddenly bend or collapse at any time prior to plaintiff's accident.

¶ 9 Pacanowski was present at the Harvest Fest at the time of plaintiff's accident. He personally helped set up the wagon entry and exit areas and he handled and observed the step stool prior to plaintiff's accident. Prior to plaintiff's accident, which occurred at approximately 3:35 p.m., Pacanowski had observed several groups of patrons–estimated at several dozen

- 3 -

patrons total–use the step stool without incident. He claimed that the same step stool had been used for the 2009 Harvest Fest without known incident, problem, or complaint of any kind. The step stool was provided as a convenience to Harvest Fest patrons, who total several thousand per year. Plaintiff's accident was the only known or claimed injury by any patron concerning the use of the step stool, according to Pacanowski. After plaintiff's accident, the Park District immediately stopped using the step stool for any purpose.

¶ 10    Also included with Pacanowski's affidavit were two pictures: one of the flyer for the 2010 Harvest Fest (advertising, among other attractions, the hayride), and one of the step stool after plaintiff's accident, which clearly shows the front left leg bent inward at the joint where the leg meets the first of two steps. Pacanowski's was the only affidavit attached to defendants' motion for summary judgment; John Doe did not provide one.

¶ 11    On September 4, 2012, plaintiff filed a motion for discovery pursuant to Illinois Supreme Court Rule 191(b) (eff. July 1, 2002). Plaintiff requested that the trial court strike defendants' motion for summary judgment or, alternatively, allow for sufficient discovery to allow plaintiff to respond to the motion. Plaintiff argued, however, that he should not be required to comply with Rule 191(b) merely because defendants suggested that plaintiff could not, at the current stage of the litigation, prove his case; rather, the motion for summary judgment was premature. Plaintiff further argued that defendants had not answered the written discovery he had served, nor had defendants identified John Doe, who was an eyewitness to plaintiff's accident. Any knowledge of John Doe, or other eyewitnesses, was in defendants' exclusive purview. Plaintiff therefore argued that the trial court must require defendants to answer his interrogatories so plaintiff could gain information regarding knowledge of the condition of the step stool, notice of any defects, maintenance schedules, repair procedures, names of other witnesses to the accident, and observations made prior to the accident. Plaintiff also argued that the trial court should require defendants to produce documents about the step stool and the accident before addressing the motion for summary judgment. Plaintiff argued that, without access to knowledge and information within the sole province of defendants, he could not prove his case and that a ruling on summary judgment before discovery could properly transpire would prematurely foreclose him from doing so.

¶ 12    Defendants objected to plaintiff's discovery motion. On September 19, 2012, defendants filed their response in opposition to the motion, arguing that under the Code a "defendant may, at any time, move" for summary judgment. 735 ILCS 5/2-1005(b) (West 2010). Defendants argued that they did not have an obligation to wait for full discovery–or even partial discovery–before filing their motion for summary judgment. Furthermore, defendants characterized their summary judgment motion as a "traditional" motion, supported by affidavit, as opposed to a *Celotex*-type motion, which relies on the weakness of the opponent's case instead of the affirmative strength of the movant's. See *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Defendants contended that plaintiff therefore needed to either respond to the motion for summary judgment or comply with the affidavit requirement of Rule 191(b), specifying the persons whose affidavits he needed in order to properly respond to the motion and the information he expected such persons to provide. Yet, defendants noted, plaintiff did neither. Moreover, defendants argued that it would be unfair and prejudicial to require them to

participate in full-fledged discovery when they had a dispositive motion pending. The dispositive motion would lose any value to defendants as a vehicle to avoid litigation expenses if full discovery had to occur before the motion was adjudicated.

¶ 13     Plaintiff replied that he was in compliance with Rule 191(b) and that, regardless, the trial court had authority to stay disposition of the motion for summary judgment to allow for discovery to proceed.

¶ 14     On October 3, 2012, the trial court held a hearing on plaintiff's motion for discovery. The trial court ruled that the case would be continued to allow for discovery for a reasonable period of time and that defendants should answer any outstanding discovery requests within 30 days. Plaintiff would also be allowed to test the step stool and depose John Doe and Pacanowski. The court continued the case until January 9, 2013, for the setting of a briefing schedule on the summary judgment motion. Dutton told the court that he would be filing a motion that defendants be held in contempt, saying "I am not going to produce anybody. I would produce the affiant but I will not produce anyone else." The court entered an order that same day, giving defendants until November 2, 2012, to answer outstanding discovery requests, and until January 9, 2013, to produce Pacanowski and John Doe for depositions.

¶ 15     Dutton made good on his promise. On October 16, 2012, defendants filed their motion to be held in contempt, pursuant to *Norskog v. Pfiel*, 197 Ill. 2d 60 (2001). Dutton requested that the trial court hold them "in 'friendly' civil contempt, in order to enable the Park District to file an immediate interlocutory appeal from this Court's 10/3/12 order."

¶ 16     On November 8, 2012, the trial court granted defendants' contempt motion. The trial court's order held defendant Park District and its counsel in civil contempt "for the purpose of appealing from the court's discovery order of 10/3/12," such an appeal being proper pursuant to Rule 304(b)(5). The trial court imposed a fine of $100 per week but ordered that the fine would be stayed pending resolution of the appeal.

¶ 17     Defendants[2] timely appealed.


¶ 18                              II. ANALYSIS
¶ 19                          A. Standard of Review

¶ 20     Defendants argue that their appeal presents solely questions of law and that the *de novo* standard of review therefore applies. They argue that the *de novo* standard has been applied to various appeals from contempt orders relating to discovery (see, *e.g.*, *Allen v. Peoria Park District*, 2012 IL App (3d) 110197, ¶ 9) and that the standard is also applied when a court determines whether a party's affidavit complies with the requirements of Rule 191(b) (see *Roe v. Jewish Children's Bureau of Chicago*, 339 Ill. App. 3d 119, 128 (2003)). Defendants frame

_____

[2]Plaintiff questions whether John Doe has standing to appeal since the contempt order applied to "Defendant and its counsel," referring to the Park District. Furthermore, plaintiff argues that John Doe did not file an appellant's brief and therefore forfeited any argument, even if he has standing. If we were to reverse the discovery order, plaintiff argues, we should reverse it with respect to only the Park District, not John Doe. Because we do not reverse the order, we need not address this contention any further.

the issue as "whether the court can disregard Supreme Court Rules 137 and 191(b), and Section 2-1005(b) of the Code of Civil Procedure, as well as settled case law, and direct the Park District to complete 'full discovery' *** before *** a hearing on its motion for summary judgment," requiring *de novo* review.

¶ 21　　Plaintiff disagrees, arguing as follows. If defendants are successful in their appeal of the discovery order, both the discovery order and the contempt order will be reversed. Even if defendants' appeal fails with regard to the discovery order, defendants may argue, and in their briefs in fact have argued, that they should be purged of their contempt. Therefore, the standard of review relevant to this appeal is not the standard applicable to the review of contempt orders, but is the standard applicable to the review of discovery orders in general: namely, the abuse-of-discretion standard.

¶ 22　　We agree with plaintiff. The primary issue on appeal is defendants' disagreement with the discovery order, which continued the motion for summary judgment until defendants comply with certain specified discovery. See *Wisniewski v. Kownacki*, 221 Ill. 2d 453, 458 (2006) ("[W]hen an individual appeals contempt sanctions for refusing to comply with a discovery order, the discovery order itself is subject to review."); *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002) (appeal from contempt sanction for violating, or threatening to violate, a discovery order presents to the reviewing court the propriety of the discovery order). In general, discovery orders are reviewed for an abuse of discretion. *Wisniewski*, 221 Ill. 2d at 457; see *Cangelosi v. Capasso*, 366 Ill. App. 3d 225, 227 (2006) (court reviews discovery order in appeal arising from contempt for noncompliance with discovery order; discovery orders generally reviewed for abuse of discretion, but applicability of privilege is reviewed *de novo*).

¶ 23　　Here, defendants moved to be held in contempt in order to appeal the discovery order, which ordered them to produce witnesses for deposition and answer written discovery already served upon them. There is no claim of privilege or any pure question of law before us; there is only the trial court's exercise of its discretion in continuing defendants' motion for summary judgment until after completion of reasonable discovery. We disagree with defendants' attempt to frame the issue as whether the trial court failed to interpret and apply "Supreme Court Rules 137 and 191(b), and Section 2-1005(b) of the Code of Civil Procedure," such that our job is merely to interpret these provisions. First of all, while section 2-1005(b) indeed states that a defendant may move for summary judgment at any time, it does not say that the trial court must immediately adjudicate the motion regardless of pending discovery. 735 ILCS 5/2-1005(b) (West 2010) ("A defendant may, at any time, move *** for a summary judgment in his or her favor ***."). Furthermore, plaintiff did file an affidavit under Rule 191(b), detailing that he needed to depose certain individuals, including John Doe, although he did not yet know the identity of John Doe, which is information in the sole possession of defendants. As we discuss in greater detail in the next part of our analysis, case law supports that there are times when compliance with Rule 191(b) is not required, and determination of whether plaintiff in this case is excepted from compliance is not based on a mere interpretation of Rule 191(b) but rather is based on the facts of the case and the content of defendants' summary judgment motion. In short, this case presented a discovery matter within the discretion of the

trial court to decide, and we will review it accordingly for an abuse of discretion. See *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶¶ 97-98 (applying abuse-of-discretion standard to issue of whether plaintiff complied with Rule 191(b)); *Crichton v. Golden Rule Insurance Co.*, 358 Ill. App. 3d 1137, 1150 (2005) (applying abuse-of-discretion standard to trial court's denial of plaintiff's Rule 191(b) motion).

¶ 24                      B. Character of Defendants' Motion for Summary Judgment

¶ 25        As a threshold issue, we must review what type of summary judgment motion defendants filed: a *Celotex*-type motion or a traditional motion.[3] The *Celotex*-type summary judgment motion we refer to stems from the United States Supreme Court decision in *Celotex Corp.*, 477 U.S. 317 (interpreting Federal Rule of Civil Procedure 56), and Illinois courts recognize that a similar interpretation applies to the Code's counterpart to the federal rule. See *Department of Financial & Professional Regulation v. Walgreen Co.*, 2012 IL App (2d) 110452, ¶ 22 (*Celotex*-type motion described as one that argues that the petitioner is unable to prove its case); *Pecora v. County of Cook*, 323 Ill. App. 3d 917, 934 (2001) (same). For a defendant who does not have the burden of proof at trial on the issue(s) on which it moves for summary judgment, there are two recognized ways that the defendant can succeed in securing judgment as a matter of law: (1) by affirmatively disproving an element of the nonmovant's case–or, in other words, proving something that the defendant would not be required to prove at trial–often referred to as a "traditional" motion for summary judgment; and (2) by establishing that the nonmovant's evidence is insufficient to avoid judgment as a matter of law, which is a *Celotex*-type motion. See, *e.g.*, *Willett v. Cessna Aircraft Co.*, 366 Ill. App. 3d 360, 368 (2006).

¶ 26        Whether we classify a defendant's motion for summary judgment as traditional, or as a *Celotex*-type motion, matters. This is because strict compliance with Rule 191(b)'s affidavit requirement, applicable when the nonmovant still requires discovery of material facts to respond to the motion, is not automatically necessary when a defendant files a *Celotex*-type motion, whereas compliance is required with a traditional motion. See *Willett*, 366 Ill. App. 3d at 369 ("A *Celotex*-type motion is appropriate only when the nonmovant has had an adequate opportunity to conduct discovery."); *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 692 (2000) ("Although a plaintiff must comply with Rule 191(b) when a defendant has affirmatively shown that it is entitled to judgment, it is quite another matter to require such compliance when defendant *** merely suggests that plaintiff is unable to prove his case."); Richard A. Michael, Illinois Practice § 38.4 (2012) ("Where a motion for summary judgment is made by the party who does not have the burden of proof on an issue asserting that the nonmovant cannot prove a prima facie case, it is critical that the respondent be given a reasonable opportunity to conduct discovery before summary judgment ***.").

_____

[3]Defendants also make a brief argument that the trial court erred by allowing plaintiff's claim to go forward in violation of Rule 137, that is, plaintiff filed his motion for discovery without his claim being well-grounded in fact. However, as we discuss later in this opinion, this argument is not properly before us on appeal, and we will not consider it.

¶ 27       Professor Richard A. Michael of Loyola University Chicago School of Law articulates a cogent and concise summary of the interaction of Rule 191(b) and *Celotex*-type motions for summary judgment. Michael, *supra*, § 38.4. Because a motion for summary judgment under section 2-1005 may be made by a defendant at any time, the plaintiff will often desire to conduct discovery before responding to the motion. *Id.* Doing so generally requires compliance with Rule 191(b), but this is not always the case. The trial court has discretion to permit a continuance for discovery without compliance with Rule 191(b), and, moreover, it is "critical that the respondent be given a reasonable opportunity to conduct discovery before summary judgment is rendered against him or her" in a case where the movant asserts that the nonmovant cannot prove a *prima facie* case and the movant does not have the burden of proof on the issue. *Id.* Furthermore, when the United States Supreme Court approved of the use of such a summary judgment motion in *Celotex*, it stressed the importance of a prior opportunity for discovery:

> " 'In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial.' " *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322).

¶ 28       This reasoning behind trial court discretion is sensible and persuasive. Discovery is intended, first and foremost, for the "ascertainment of truth, for the purpose of promoting either a fair settlement or a fair trial." *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 282 (1982); see also *Mueller Industries, Inc. v. Berkman*, 399 Ill. App. 3d 456, 464 (2010) (noting that Illinois adheres to a strong policy of encouraging disclosure, with an eye toward ascertaining truth); *People v. Turner*, 367 Ill. App. 3d 490, 499 (2006) (discovery rules prevent surprise or unfair advantage by either party and aid in search for the truth). Rule 191(b) outlines the procedure to follow when material facts are not obtainable in relation to a pending motion for summary judgment, and it requires "naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn," when the affidavits are unobtainable by reason of "hostility or otherwise." Ill. S. Ct. R. 191(b) (eff. July 1, 2002). In the normal course of pretrial proceedings, requiring compliance with Rule 191(b) makes good sense, such as in *Gill v. Chicago Park District*, 85 Ill. App. 3d 903, 906-07 (1980), where the plaintiff had three years to compile discovery and, after the defendant moved for summary judgment, did not file a response or a counteraffidavit, nor did he request additional continuances for discovery purposes. The *Gill* court held that the plaintiff could not argue on appeal that the trial court erred in granting summary judgment when he did not file a Rule 191(b) affidavit. *Id.* at 907. When the nonmovant has had ample time for discovery, and does not even request a continuance for discovery, there is no reason why noncompliance with Rule 191(b) should be excused; the rule clearly outlines the procedure to be followed for procuring necessary affidavits containing material facts that are unavailable to the nonmovant when the summary judgment motion is filed. It acts, therefore, as a shield for the nonmovant: if, for instance, the movant is in sole possession of material facts relevant to summary judgment that have yet to come out through discovery, Rule 191(b) can stay the disposition of

summary judgment until the nonmovant can procure the affidavits that it knows it needs to respond to the motion.

¶ 29    However, to demand strict compliance with Rule 191(b) before adequate discovery–before a party even knows the identity of witnesses who can provide material facts–turns Rule 191(b) from a procedural safeguard for the nonmovant into a tactical weapon for the movant. By the letter of Rule 191(b), the affiant moving under the rule must name the persons whose affidavits it cannot procure, list why the affidavits cannot be procured, and provide what the affiant believes the affidavits would say. This can be an impossible task without at least a reasonable amount of discovery that both parties fairly and in good faith participate in. Here, plaintiff knows that he was injured at the Park District's Harvest Fest, but he does not know the identity of the operator of the hayride on which he injured himself while exiting.

¶ 30    Essentially, echoing Professor Michael, it is basic fairness that dictates that a plaintiff, whose complaint has survived a motion to dismiss, is entitled to investigate and attempt to substantiate his claims before facing a motion for summary judgment that claims that he is unable to prove his case. Strict compliance with Rule 191(b) is not required for a *Celotex*-type motion, and this position comports with the truth-finding spirit of discovery and the trial court's broad discretion in handling discovery matters.

¶ 31                     1. Defendants Argue That Their Summary Judgment
                              Motion Is a Traditional Motion

¶ 32    Defendants argue that their motion for summary judgment is a traditional motion, requiring plaintiff to comply with Rule 191(b). Defendants claim that their motion presented affirmative evidence that established their entitlement to summary judgment, namely, Pacanowski's affidavit. They also argue that plaintiff provided "*no facts* to establish that the Park District had either actual or constructive notice" (emphasis in original) that the step stool was negligently maintained or used. Whether plaintiff provided facts to establish his case, however, is inapposite to a determination of whether defendants affirmatively presented facts that disproved plaintiff's case–indeed, arguing that plaintiff provided no facts to establish his case would be the basis of a *Celotex*-type motion.

¶ 33    Defendants continue that Pacanowski's affidavit established certain facts: first, that the Park District did not have actual or constructive notice as a matter of law. The portions of Pacanowski's affidavit they cite in support are that numerous patrons had used the same step stool during the current and the previous year's festivals without any known incident, injury, or complaint, and that Pacanowski personally assisted in setting up the hayride's entry and exit areas and observed dozens of patrons enter and exit the ride via the step stool without any incident or injury for about 2½ hours prior to plaintiff's accident. These facts, defendants contend, are undisputed and completely negate plaintiff's allegations that the Park District had prior notice of a defective condition regarding the step stool.

¶ 34    Next, defendants argue that Pacanowski's affidavit affirmatively established that the Park District did not act willfully and wantonly with regard to any failure to predict or prevent plaintiff's accident. Defendants first cite section 3-106 of the Tort Immunity Act (745 ILCS

10/3-106 (West 2010)), which precludes liability of public entities and employees for injuries on public property or property used for recreation, such as parks or playgrounds, *unless* the public entity or employee proximately caused the injury *willfully and wantonly*. This provision was the basis for the trial court's dismissal of plaintiff's negligence count. They then cite section 1-210 of the Tort Immunity Act (745 ILCS 10/1-210 (West 2010)), which defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." Defendants further cite *Leja v. Community Unit School District 300*, 2012 IL App (2d) 120156, for the proposition that a plaintiff must allege facts that establish that the defendant was *conscious* of a high probability of harm to others. The *Leja* court framed the central issues as "whether plaintiff alleged sufficient facts that, taken as true, would permit the inference that defendant was conscious that directing plaintiff to operate the volleyball net crank would 'naturally and probably result in injury' or 'posed a high probability of serious physical harm.' " *Id.* ¶ 12. Although the plaintiff alleged that the defendant had experienced prior difficulties with the crank and that it had snapped back on prior occasions, the plaintiff also admitted that the defendant was unaware of any prior injuries related to use of the crank. *Id.* The court found that the allegations were insufficient to state a claim for willful and wanton misconduct on the part of the defendant. *Id.* ¶¶ 12-13, 25.

¶ 35       Defendants also cite *Tagliere v. Western Springs Park District*, 408 Ill. App. 3d 235 (2011), to show that the mere existence of a potentially dangerous condition on recreational property–and the failure to discover or warn of the condition–is insufficient to support an allegation of willful and wanton misconduct. In *Tagliere*, the plaintiff alleged injuries after she used a seesaw at the defendant's park. *Id.* at 236. The *Tagliere* court affirmed the trial court's entry of summary judgment in favor of the defendant, noting that there was no evidence that the defendant either knew or had reason to know of prior injuries involving the seesaw or that it removed a safety device from the seesaw. *Id.* at 248. Therefore it held that the trial court properly granted summary judgment for the defendant on the plaintiff's claim of willful and wanton misconduct under section 1-210 of the Tort Immunity Act (745 ILCS 10/1-210 (West 2008)). *Tagliere*, 408 Ill. App. 3d at 248. Under *Leja* and *Tagliere*, defendants argue, Pacanowski's affidavit established that there were no prior injuries known to the Park District, which therefore, at most, could be liable for mere negligence.

¶ 36       Defendants' final argument for why their motion is a traditional motion for summary judgment is that, under sections 2-109 and 2-201 of the Tort Immunity Act (745 ILCS 10/2-109, 2-201 (West 2008)), the Park District is absolutely immune from liability. Section 2-201 states:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2010).

Section 2-109 provides, "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2010). Defendants argue that sections 2-109 and 2-201 together make the Park District absolutely

immune from liability because it exercised judgment and discretion in determining what equipment to use for the hayride and where and how to set that equipment up. Therefore, defendants argue, even if the Park District breached a duty owed to plaintiff, it would nevertheless be immune from liability.

¶ 37                    2. Plaintiff Argues That the Summary Judgment Motion
                                  Is a *Celotex*-type Motion

¶ 38        Plaintiff responds to each of defendants' arguments in turn, arguing that defendants' summary judgment motion is indeed a *Celotex*-type motion. First, plaintiff argues that Pacanowski's affidavit did not do enough to make defendants' motion a traditional motion, because it did not establish that the Park District did not have actual or constructive notice of any defect with the step stool; at most, it established that *Pacanowski* did not have actual or constructive notice of any defect, but there are other employees and/or agents of the Park District who could be used to establish liability on the part of the Park District. Plaintiff named John Doe as an agent and/or employee of the Park District and alleged that John Doe, as operator of the hayride, had actual or constructive notice of a defect in the step stool. If John Doe did have such notice, notice would be imputed to the Park District via the doctrine of *respondeat superior*. See, *e.g.*, *Vancura v. Katris*, 238 Ill. 2d 352, 375 (2010) (employee liability for tort imputed to employer under *respondeat superior* if tort was committed within the scope of employment); *Hengels v. Gilski*, 127 Ill. App. 3d 894, 905 (1984) (knowledge possessed by employee may be imputed to employer).

¶ 39        Next, plaintiff contends that Pacanowski's affidavit did not affirmatively establish that the Park District did not engage in willful and wanton misconduct. Plaintiff argues that: (1) Pacanowski's affidavit does not address the age of the step stool, its maintenance history, the length of time it had been in use, or its condition at the time of the accident; (2) his affidavit does not address John Doe's conduct, which, if willful and wanton, is imputable to the Park District; and (3) whether willful and wanton misconduct occurred is a question of fact for the jury to decide. See *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 245 (2007) (generally willful and wanton misconduct is a question for the jury). In addition, plaintiff cites *Murray* to rebut defendants' contention that section 1-210 of the Tort Immunity Act (745 ILCS 10/1-210 (West 2010)) created a heightened standard for willful and wanton misconduct. *Murray*, 224 Ill. 2d at 242. However, *Murray* is inapposite here: the *Murray* court expressed no opinion as to whether the legislature intended section 1-210 to impose a heightened standard for willful and wanton misconduct. *Id.* at 242-43.

¶ 40        Finally, plaintiff attacks defendants' argument that they enjoy absolute immunity from liability under the Tort Immunity Act by arguing that the use of a defective step stool was not a determination of policy or an act of discretion. Plaintiff argues that section 2-201 (745 ILCS 10/2-201 (West 2010)), which provides immunity to public employees who are serving in a position involving determination of policy or the exercise of discretion, is not necessarily applicable here. Plaintiff has identified John Doe in his complaint, but without more information about John Doe–information plaintiff has requested in discovery–it is impossible to know the nature of his position with the Park District and whether that position involved the

determination of policy or the exercise of discretion. Further, although Pacanowski is a public employee subject to immunity under section 2-201, his affidavit does not attest to whether he made any policy decision or exercised discretion in relation to the acquisition, use, or maintenance of the step stool. Moreover, plaintiff disagrees that the decision to use the step stool for the hayride was a policy decision or an exercise of discretion. Rather, plaintiff argues, a policy decision is one that requires the entity to balance competing interests and to make a judgment call as to what solution will best serve each of those interests. *Karalyos v. Board of Education of Lake Forest Community High School District 115*, 788 F. Supp. 2d 727, 730-31 (N.D. Ill. 2011) (citing *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335 (1998)). The decision, as plaintiff characterizes it, was not whether to use a red or blue step stool, or a metal or plastic one, or one that costs $25 or $50; the decision was a deliberate one to use a step stool known by John Doe to be dangerous and defective. It was not a decision that required balancing competing interests or making a judgment call–in essence, as we read it, plaintiff argues that the use of the step stool was a ministerial act performed in the execution of John Doe's duty to operate the hayride, not a discretionary act on his part. See *Snyder v. Curran Township*, 167 Ill. 2d 466, 474 (1995) (discretionary versus ministerial functions determined on case-by-case basis; ministerial functions are those performed on a given set of facts in a prescribed manner without reference to the official's discretion as to the propriety of the act); *Torres v. City of Chicago*, 123 F. Supp. 2d 1130, 1133-34 (N.D. Ill. 2000) (police officer's action of calling for medical aid for an injured victim was a ministerial act; the discretion rested not with the officer but with the promulgated police order that prescribed that the officer first provide aid to the injured).

¶ 41 Plaintiff continues that immunity under section 2-201 must be pled as an affirmative defense. *Donovan v. County of Lake*, 2011 IL App (2d) 100390, ¶ 61. Therefore, defendants must establish, at a minimum, the decision to be made, the person making the decision, that the decision involved an exercise of discretion or a determination of policy, and that the person making the decision was serving in a position that involved the exercise of discretion or the determination of policy at the time. Plaintiff argues that defendants have not provided these necessary factual bases, in no small part because defendants do not at any point address who John Doe is, what he knew, or how he acted.

¶ 42 Plaintiff finally argues that, even if we reject his arguments regarding immunity and find defendants' immunity argument to be typical of a traditional motion for summary judgment, defendants' other two arguments for summary judgment are still typical of a *Celotex*-type motion and thus plaintiff is still entitled to discovery before responding to the motion.

¶ 43                                                   3. Resolution

¶ 44 We agree with plaintiff insofar as, in this case, the trial court properly exercised its discretion in continuing the motion for summary judgment and excepting strict compliance with Rule 191(b). First, two out of the three arguments defendants make in their summary judgment motion are typical of a *Celotex*-type motion. Defendants' argument, predicated on the affidavit of Pacanowski, that plaintiff cannot prove that the Park District had notice, actual or constructive, does not affirmatively rebut plaintiff's allegations. To do so, defendants'

motion and accompanying affidavit would have to address whether John Doe was on notice; they do not. Likewise, defendants' motion and affidavit do not address whether John Doe acted willfully and wantonly, as also would be necessary to affirmatively defeat plaintiff's allegations. While, in form, defendants argue that Pacanowski's affidavit affirmatively disproves plaintiff's claim, in substance they argue only that plaintiff cannot present facts necessary to support his case, and in doing so they conflate Pacanowski's knowledge and state of mind with that of all other Park District employees, including John Doe. Because their argument does not address John Doe, we are left with nothing more than the simple argument that plaintiff cannot show notice or willful and wanton misconduct.

¶ 45       Regarding notice, while a prior accident could establish conscious awareness, the absence of a prior accident does not necessarily preclude a finding of willful and wanton misconduct. See *A.D. v. Forest Preserve District*, 313 Ill. App. 3d 919, 923 (2000) (providing three disjunctive ways to find that an entity engaged in willful and wanton misconduct, including knowledge of prior injuries or knowledge of the dangerous condition); *Palmer v. Chicago Park District*, 277 Ill. App. 3d 282, 288-89 (1995) (sufficient claim for willful and wanton misconduct where a 3-foot-tall, 30-foot-long protective fence had been lying on its side for three months, defendant's employees inspected the lot daily, and the fallen fence resulted in plaintiff's injury, but there were no allegations of prior injuries); *Soucie v. Drago Amusements Co.*, 145 Ill. App. 3d 348, 352 (1986) (owner/occupier's failure to warn of concealed dangers of which it is aware constitutes willful and wanton misconduct). Rather, plaintiff must put forth facts that satisfy the elements of negligence plus show either intent to harm or conscious disregard for plaintiff's well-being. *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 19 (willful and wanton misconduct is regarded as an aggravated form of negligence; plaintiff must plead the basic elements of negligence plus allege either deliberate intention to harm or conscious disregard for plaintiff's welfare); see also *Giers v. Anten*, 68 Ill. App. 3d 535, 539 (1978) ("Whether a particular act constitutes willful and wanton misconduct depends upon the facts of each case [citation] and has also been held to be a question of fact for the jury to determine.").

¶ 46       Furthermore, defendants' cited cases are not helpful here in determining whether Pacanowski's affidavit affirmatively established that the Park District did not act willfully or wantonly as a matter of law. *Leja* dealt with the dismissal of an amended complaint, not with the more narrow issues before us, that is, whether defendants filed a *Celotex*-type or a traditional motion for summary judgment, and, in light of that determination, the propriety of the trial court's order to continue the motion for summary judgment so as to let discovery proceed. Likewise, *Tagliere* reviewed an entry of summary judgment, not the character of the summary judgment motion in conjunction with the court's exercise of discretion over discovery matters. Defendants also cited *Callaghan v. Village of Clarendon Hills*, 401 Ill. App. 3d 287 (2010), which again does not address the issues before us but rather reviewed the propriety of a dismissal based on the pleadings. The *Callaghan* court affirmed the dismissal of the count alleging willful and wanton misconduct (the case involved a plaintiff who slipped and fell on ice on a sidewalk maintained by the municipality defendant), because the plaintiff failed to allege facts that the sidewalk was unreasonably dangerous, that the snow pile created

- 13 -

by the defendants created the alleged dangerous condition, and how that creation of the snow pile evinced a conscious disregard for the safety of pedestrians. *Id.* at 303. Here, in contrast, plaintiff alleged that John Doe was aware of an unsafe condition with the step stool (rusted and physically damaged in visible areas), which was being used by patrons of the Park District's hayride. Regardless, we are not reviewing the sufficiency of the pleadings; we are determining the character of defendants' motion for summary judgment for purposes of reviewing the trial court's exercise of its discretion to continue summary judgment for further discovery. *Callaghan* does not aid us in this regard.

¶ 47    It very well may be that plaintiff cannot provide facts that would raise an issue of material fact as to whether John Doe had notice or whether he intentionally or consciously disregarded a dangerous condition regarding the step stool. However, plaintiff should first be given an opportunity to discover those facts, if indeed there are facts to be discovered. In short, after plaintiff conducts discovery, only then will it be fair and just for defendants to argue that plaintiff cannot, as a matter of law, prove his case. The likely outcome of plaintiff's case, on which we proffer no opinion, is wholly irrelevant to this opinion.

¶ 48    Defendants' final argument–that the Park District is absolutely immune from liability under the Tort Immunity Act–purports to be an affirmative ground for summary judgment, in no small part because the argument presents an affirmative defense. However, we agree with plaintiff that this affirmative defense does not alone make defendants' motion a traditional motion for summary judgment. First of all, defendants' affirmative defense suffers from the same shortcoming as their other two arguments, namely, even if established the defense does not defeat plaintiff's case because it does not address the Park District's liability that may extend from John Doe. We need not delve into the merits of defendants' contentions–which are not at issue on appeal–to determine this. Defendants argue that the Park District is immune from liability because section 2-201 immunizes employees who serve in a position that involves determining policy or exercising discretion when they are acting to determine policy or exercise discretion, and section 2-109 shields entities when employees are not liable. However, defendants did not present any evidence that would establish whether *John Doe* was in a position involving determination of policy or exercise of discretion, much less whether John Doe exercised discretion in the use of the step stool. They presented no evidence regarding John Doe at all, even though it is defendants, not plaintiff, who have the burden of persuasion on their affirmative defense. *Moore v. Farmers Insurance Exchange*, 111 Ill. App. 3d 401, 408 (1982). Therefore, even if Pacanowski's affidavit affirmatively established his immunity from liability under the Tort Immunity Act, the question of whether John Doe is liable, not liable, or immune from liability remains unaddressed.

¶ 49    Furthermore, in accord with our holding that strict compliance with Rule 191(b) is not always required, it would be inequitable to require strict compliance with Rule 191(b) here. Defendants have not yet disclosed the identity of the employee who plaintiff alleges acted willfully and wantonly. They have made it impossible for plaintiff to strictly comply with Rule 191(b) at the current stage of the litigation, because plaintiff does not even know John Doe's real name, which is information in the sole purview of defendants. For defendants' affirmative defense to succeed, they would have to put forward affidavits or the like tending to establish

- 14 -

that John Doe is immune from liability under the Tort Immunity Act, which they have not done. If defendants had disclosed John Doe's identity and presented his affidavit and/or perhaps deposition testimony, then plaintiff could have and should have complied with Rule 191(b) if he needed more time for discovery before responding to the motion for summary judgment. However, that not being the case, we refuse to hold plaintiff to strict compliance with Rule 191(b). Defendants want to have their cake and eat it too: they want plaintiff to comply with Rule 191(b) as if defendants had participated in discovery, without having to participate in discovery; they want us to find that plaintiff cannot prove his case, without allowing him the procedures he is due to make his case.

¶ 50 Accordingly, we find that the trial court properly exercised its discretion to continue proceedings on summary judgment for discovery to first proceed. Defendants' motion is, in substance, a *Celotex*-type motion because, even if all its allegations were found true, it could not successfully disprove any essential element of plaintiff's case. Moreover, the trial court's discretion in handling discovery matters and the inequitable result that would follow from strict compliance with Rule 191(b) here make compliance unnecessary. Because plaintiff was not required to comply with Rule 191(b), we do not address defendants' arguments that plaintiff failed to comply with Rule 191(b). On remand defendants should comply with the discovery order.

¶ 51                                    C. Compliance With Rule 137

¶ 52 Defendants argue that the trial court erred by allowing plaintiff to conduct discovery in violation of Illinois Supreme Court Rule 137 (eff. July 1, 2013), that is, by not requiring plaintiff to investigate whether his claim was well-grounded in fact before filing it. Defendants contend that plaintiff filed his case without any evidence to support his claim, therefore violating Rule 137.

¶ 53 However, defendants' Rule 137 argument is not properly before us. In an appeal from an order of civil contempt, we are confined to review only those matters relevant to the order and not matters outside of it. See *In re Marriage of Nettleton*, 348 Ill. App. 3d 961, 968 (2004) (review of trial court's finding of indirect civil contempt encompassed review of only the order respondent refused to comply with); see also Ill. S. Ct. R. 304(b)(5) (eff. Feb. 26, 2010) (specifying the particular order of contempt as appealable under the rule); *Norskog*, 197 Ill. 2d at 69 (when appealing contempt order for refusal to comply with a discovery order, the discovery order is also subject to review because review of the contempt order necessarily requires review of order upon which it is based). Defendants' Rule 137 argument is not relevant to the trial court's order holding defendants in contempt, and it is therefore outside of our jurisdiction. Moreover, defendants never made a Rule 137 motion in the trial court, much less one material to the contempt order. Accordingly, we strike defendants' Rule 137 argument.

¶ 54                                    D. Civil Contempt Order

¶ 55 We have already disagreed with defendants that the trial court abused its discretion in issuing the discovery order, so we do not address their argument that the contempt order should be vacated because the discovery order, with which they refused to comply, was improper. Defendants argue that, regardless of the validity of the discovery order, the contempt order should be reversed because the $100-per-week fine was excessive. Defendants cite various cases involving one-time fines of $25 to $100.

¶ 56 Plaintiff believes that defendants, although holding an opposing view on the propriety of the discovery order, acted in good faith and that requesting the trial court to hold defendants in civil contempt was the only way to obtain review of the discovery order. See *Norskog v. Pfiel*, 314 Ill. App. 3d 877, 881 (2000). Plaintiff points out the scant case law directly addressing the situation of granting a continuance to conduct discovery prior to responding to a motion for summary judgment. Plaintiff agrees that defendants should be purged of contempt, with one caveat: if we validate the discovery order, the purging of contempt should be contingent upon defendants' compliance with the discovery order.

¶ 57 Exposing oneself to a finding of contempt is an appropriate means of testing the validity of a court order in Illinois. *Buckholtz v. MacNeal Hospital*, 313 Ill. App. 3d 521, 527 (2000). Furthermore, when the contemnor refuses to comply with the court order in a good-faith effort to secure an interpretation of an issue without direct precedent, it is appropriate to vacate the contempt citation on appeal. *In re Marriage of Rosenbaum-Golden*, 381 Ill. App. 3d 65, 82 (2008); see *In re Marriage of Nettleton*, 348 Ill. App. 3d at 971-72 (vacating indirect civil contempt order where petitioner asked to be held in contempt so as to appeal trial court order). Given the paucity of direct authority on point, and plaintiff's acquiescence that defendants acted in good faith, we vacate the contempt order, contingent upon defendants' compliance with the discovery order. See *Buckman v. Columbus-Cabrini Medical Center*, 272 Ill. App. 3d 1060, 1067 (1995) (vacating contempt order entered at petitioner's request where contempt order was used as a vehicle to appeal a discovery order).

¶ 58                                        III. CONCLUSION

¶ 59 In this case, defendants made a good-faith effort to challenge the trial court's discovery order–as plaintiff acknowledges–and it is therefore appropriate to vacate the trial court's contempt order. Defendants' argument that plaintiff violated Rule 137 is not properly before us, and we therefore strike it. In sum, although we find the discovery order valid and the continuance of the motion for summary judgment appropriate, we vacate the contempt order of the Du Page County circuit court and remand the cause.

¶ 60 Vacated and remanded.