2021 IL App (1st) 200380-U

No. 1-20-0380

Order filed August 18, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| AMALGAMATED TRANSIT UNION and AMALGAMATED TRANSIT UNION LOCAL 241, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| MICHAEL BARRON; MARY BEARD; MICHAEL FAIRCHILD; CARLOS HARRIS; VERN HODGES; REUBEN JOHNSON; CEDRIC JONES; ERNEST JONES III; VENITA JONES; RUTH LATSON; FREDERICK McCLURE; KEVIN MITCHELL SR.; LARRY MUHAMAD; HERMAN REYES; DWAYNE SAVAGE; NATHANIEL SCURLOCK; MICHAEL SEATON; GUS STEVENS; MICHAEL TAYLOR; LONNIE WALKER; MICHAEL WALLACE; AND MICHAEL A. WILLIAMS, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 17 L 8502 |
| Defendants, | ) ) | |
| (Carlos Harris; Vern Hodges; Ernest Jones III; Venita Jones; Herman Reyes; Michael Seaton; Gus Stevens; Michael Taylor; and Lonnie Walker, Defendants and Counterplaintiffs-Appellants) | ) ) ) ) ) | Honorable Patrick J, Sherlock, Judge presiding. |

No. 1-20-0380

    v.                                                        )
                                                                 )

AMALGAMATED TRANSIT UNION,              )
                                                                   )

    Plaintiff and Counterdefendant-Appellee.     )

---

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

## ORDER

¶ 1    *Held*:  We affirm the circuit court's grant of summary judgment in favor of Amalgamated Transit Union and its local affiliate on their claims against the defendants and the court's subsequent denial of the defendants' motion to reconsider, and affirm the court's grant of summary judgment in favor of Amalgamated Transit Union on the defendants' counterclaims. We also find no error by the circuit court in multiple discovery rulings and if there was error in the court's allowance of a "deliberative privilege" during a deposition, such an error was harmless.

¶ 2    Amalgamated Transit Union (ATU) and its local affiliate, Amalgamated Transit Union Local 241 (Local 241), sued former members of Local 241's executive board, Carlos Harris, Vern Hodges, Ernest Jones III, Venita Jones, Herman Reyes, Michael Seaton, Gus Stevens, Michael Taylor and Lonnie Walker (the defendants), for breach of contract after they failed to pay fines that were imposed following a union disciplinary hearing. The defendants countersued ATU for breach of contract and breach of fiduciary duty. Ultimately, on motions for summary judgment by ATU and Local 241, the circuit court entered judgment in favor of ATU and Local 241 on their claims, and entered judgment in favor of ATU on the defendants' counterclaims. The court also denied the defendants' motion to reconsider its grant of summary judgment in favor of ATU and Local 241 on their claims. The defendants have appealed these rulings by the circuit court as well as various discovery rulings by the court during the litigation. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Pre Litigation

¶ 5      ATU is an international labor union representing transit workers in the United States and Canada. ATU is affiliated with local unions throughout North America, including Local 241. ATU is governed by a constitution and general laws (constitution) that is binding on all of its members, and that contains internal disciplinary procedures and protocols. ATU's constitution gave it the ability to charge any member with violations of its constitution, any local affiliate's bylaws, and the practices and policies of ATU or a local affiliate, as well as for malfeasance and nonfeasance in office, and financial malpractice.

¶ 6      During the relevant time period, Local 241 represented employees working at the Chicago Transit Authority and Pace, and Local 241 had its own bylaws that, among other details, regulated pay modifications for its executive board. One such bylaw provided that the rate of executive board members' pay could only be increased by the same increases achieved through collective bargaining. The bylaws provided no other mechanism for board members to increase their compensation. During the relevant time period, Local 241 had six executive officer positions: president, first vice president, second vice president, the financial secretary-treasurer, the recording and corresponding secretary, and the assistant business agent. In addition to the executive officer positions, Local 241 had several members of an executive board.

¶ 7      In July 2003, as ATU's constitution permitted, ATU placed Local 241 into a trusteeship in order to address deficiencies in Local 241's internal governance and administration. ATU removed Local 241 from the trusteeship a little over two years later.

¶ 8      Harris, Hodges, Ernest Jones, Venita Jones, Reyes, Seaton, Stevens, Taylor and Walker were all members of Local 241. All of them served on Local 241's executive board and were

employed by the Chicago Transit Authority except for Ernest Jones who served on Local 241's executive board but was employed by Pace. Harris, Ernest Jones, Reyes, Taylor and Walker all served on the executive board from November 2005 until September 2011. Hodges, Venita Jones and Seaton all served on the executive board from November 2005 until June 2011. And Stevens served on the executive board from July 2008 until June 2011.

¶ 9    In mid-September 2011, ATU again placed Local 241 into a trusteeship in order to address issues of financial management. The trustees subsequently undertook an examination of Local 241's administration and finances from the time period of November 2005 to early September 2011. That investigation revealed, among other details, that executive board members gave themselves year-end bonuses, referred to as "Christmas [g]ratuities," beginning in December 2005 that were not allowed under the bylaws. Additionally, the investigation revealed that board members had increased their hourly pay in January 2006 without a corresponding collectively bargained increase in compensation. The investigation further revealed that board members had failed to make required contributions to a pension fund in 2010 and 2011.

¶ 10    Around 2013, ATU amended its constitution. In previous versions, individuals accused of malpractice, malfeasance and nonfeasance had the right to be represented by counsel at a hearing on the charges. In the amended version, individuals accused of malpractice, malfeasance and nonfeasance no longer had the right to be represented by counsel at a hearing on the charges. Rather, they only had the right to be represented by "any member not serving on the trial board, as hearing officer, or on [ATU's general executive board]."

¶ 11    In late June and early July 2014, ATU's international president sent each defendant a letter informing them of the investigation's findings, including that they had been overcompensated in violation of Local 241's bylaws. In each letter, ATU's international president asserted that "[t]he

members of Local 241 rightly expect that the former Executive Board Members who received overpayments make payments to Local 241 to correct these financial deficiencies" and demanded that they repay Local 241 for the overpayments, either in full or by making financial arrangements with Local 241 by contacting an assistant general counsel. ATU's president noted that "[m]any" other former executive board members had repaid their overpayments in full or otherwise reached arrangements to satisfy their obligations. ATU's international president concluded the letter by requesting payment "expeditiously" otherwise charges could be brought against them. With each letter, ATU's international president included a spreadsheet detailing the overpayments with payroll data. In the letter to Stevens, ATU's international president acknowledged that Stevens' service on the executive board began after the improper compensation occurred, but nevertheless asserted that "they were never rescinded and their effects, therefore, continued through your time in office." None of the defendants repaid the required amounts or made financial arrangements to satisfy their alleged obligations.

¶ 12    As a result of the defendants' silence, later in July 2014, Local 241's trustees—Javier Perez, Jr. and Marcellus Barnes—sent to ATU's general executive board a charging document for each defendant detailing that he or she had engaged in both malfeasance and nonfeasance while in office as well as serious acts of financial malpractice and administrative mismanagement, all allegedly in violation of ATU's constitution, Local 241's bylaws, the policies of ATU and generally accepted practices. These charges included: (1) financial malpractice for failing to manage local union funds in accordance with ATU's constitution, Local 241's bylaws, the policies of ATU and generally accepted practices; (2) financial malpractice for failing to make proper pension fund contributions; (3) financial malpractice for misallocating money raised in arbitration assessments; (4) financial malpractice for failing to implement appropriate financial controls on

local union expenses; (5) commission of nonfeasance and malfeasance for accepting local union funds in the form of compensation for time spent conducting union business at an hourly rate that violated Local 241's bylaws and for failing to repay that compensation upon demand by ATU's international president; (6) commission of nonfeasance and malfeasance for accepting local union funds in the form of " 'Christmas [g]ratuities,' " which violated Local 241's bylaws and for failing to repay that compensation upon demand by ATU's international president. In concluding the charging document, the trustees requested that ATU's general executive board authorize the issuance and service upon the defendants of a complaint detailing the charges and directing a hearing to be held in the matter. The charging documents were signed by the trustees.

¶ 13    On July 25, 2014, ATU's international president mailed each defendant a letter with the subject of "Charges Under International Constitution and General Laws Section 12.5, Discipline of L.U. Members," although Ernest Jones' letter was dated August 1, 2014. The letter notified each defendant that ATU's general executive board authorized him to issue and serve a complaint (in the form of the letter) upon them. In addition to setting forth the six charges, ATU's international president noted that he had sent each defendant a letter in June 2014, which demanded repayment of the overpayments, but asserted that he or she never repaid the overpayment or "reached arrangements to satisfy [his or her] obligations" to Local 241. In the letter, ATU's international president once again demanded repayment or that the defendants contact ATU's assistant general counsel to reach an arrangement to satisfy their obligations to Local 241.

¶ 14    Additionally, ATU's international president stated that, pursuant to section 12.5 of ATU's constitution, a hearing would be held before a hearing officer on the charges on September 8, 2014, wherein the defendants would "be afforded all due process rights as set forth under Section 12.5, including the opportunity to present evidence, and examine and cross-examine witnesses." ATU's

international president remarked that all evidence ATU intended to present at the hearing would be sent to them and available for review at Local 241's office. Additionally, ATU's international president stated that, following the hearing, the hearing officer would issue a report to ATU's general executive board, who would ultimately determine whether each defendant was guilty and, in turn, could impose various penalties, including fines, suspensions or expulsions. ATU's international president added that "[a]ny such decision may be appealed to the International Convention." ATU's international president was the only individual who signed this letter. In mid-August 2014, ATU's international president again notified the defendants by letter about the upcoming hearing as well as provided them with the evidence ATU intended to present.

¶ 15    From September 8 until September 11, 2014, a hearing on the defendants' charges occurred before a hearing officer, Anthony Garland. The defendants were not represented by an attorney while ATU was represented by Daniel Smith, its assistant general counsel. Two months later, Garland issued a report detailing his findings and recommendations. In the report, Garland initially quoted in a lengthy footnote section 12.5 of ATU's constitution, which explained the internal disciplinary procedures for members who allegedly violated laws and policies of ATU or a local affiliate, including that "[t]he accused member or members shall have the right to be represented by counsel" and that members who had adverse findings against them had "the right to appeal to the [International] Convention and have the case fully considered and acted upon by the Convention."

¶ 16    Garland observed that executive board members of Local 241 were entitled to be paid at specific rates for their performance of union business pursuant to Local 241's bylaws. In turn, those bylaws provided that the members' rates of pay could only be increased by the same increases that had been achieved through collective bargaining. However, Garland found that, in

2005, the members gave themselves year-end bonuses, which had been referred to as " 'Christmas [g]ratuities ' " despite the fact that no such bonus had ever been collectively bargained. Similarly, Garland found that, in 2006, the members increased their rate of pay despite the fact that no such increase had been collectively bargained. Garland concluded that, based on the evidence, each of the defendants (except for Stevens, who was not an executive board member until 2008) "were well aware of the misconduct." The improper compensation resulted in an overpayment of nearly $700,000 to executive board members between November 2005 and September 2011. Garland additionally noted that, once ATU placed Local 241 into a trusteeship and the audit of Local 241 began, the auditor discovered the overpayments. Garland remarked that, as a result, ATU's international president sent each of the defendants a letter demanding that he or she repay Local 241 the corresponding overpayment, but none of them did so.

¶ 17    Based on these findings, Garland found the defendants guilty of all the charges filed against them except the third charge and made several recommendations. For charges one, two and four, Garland recommended that each defendant be fined $3000 and be suspended five years from holding, or running for, any position with Local 241. For the fifth charge—involving the hourly pay overpayments—Garland recommended that each defendant be fined an amount corresponding to his or her overpayment and be suspended five years from holding, or running for, any position with Local 241. For the sixth charge—involving the Christmas gratuities overpayment—Garland recommended that each defendant be fined an amount corresponding to his or her overpayment and be suspended five years from holding, or running for, any position with Local 241. Garland recommended that the suspensions be served concurrently and the fines from charges one, two and four be concurrent with the fines from charges five and six. In other words, Garland recommended that the defendants only be fined an amount commensurate with their overpayments, as detailed in

the fifth and six charges, and as follows: $36,859.87 for Harris, $31,571.74 for Hodges, $48,393.79 for Ernest Jones, $32,160.88 for Venita Jones, $33,981.64 for Reyes, $33,991.17 for Seaton, $15,837.72 for Stevens, $39,918.15 for Taylor and $46,087.23 for Walker.

¶ 18    ATU's general executive board adopted Garland's findings and recommendations, and on November 25, 2014, ATU's international president notified each defendant via letter of the result and provided them a copy of Garland's report. This letter also informed each defendant that he or she had "the right to appeal these findings and penalties to the [International] Convention and have the case fully considered and acted upon by the Convention."

¶ 19    Four days later, Ernest Jones, Seaton, Taylor and Walker jointly appealed the decision of ATU's general executive board to the International Convention. Harris did the same in January 2015 and specifically argued that "the proceedings convened to hear evidence to the charges did not afford the defendants the opportunity to be represented by counsel, as stated in Section 12.5 of [ATU's constitution]." Harris' appeal was consolidated with the joint appeal of Ernest Jones, Seaton, Taylor and Walker. In October 2016, after "careful consideration of the record contained in the file and hearing the presentation of the representative of certain appellants, the [International Convention's] Committee on Appeals voted, with 22 in favor, one opposed, and no abstentions, to recommend that this Convention deny" their appeals and "uphold the decision of the General Executive Board." During voting on the matter by the International Convention as a whole, Toi Bowers, a delegate to ATU from Local 241, remarked that "Christmas bonuses were the practice of Local 241. These guys did not take it upon themselves to get Christmas bonuses the term they were in. It had been going on twice before them, so they looked at it as a past practice. And I cannot let the body be misled." To this end, Bowers made a motion to "appeal the decision of the

committee." After a roll call, Bowers' motion was denied. The International Convention subsequently adopted the recommendation of the committee and denied the consolidated appeal.

¶ 20    Meanwhile, while the appeal was pending before the International Convention, Ernest Jones and Walker filed a complaint with the United States Department of Labor's office of labor-management standards, alleging that ATU unlawfully barred them from holding office in their local union in violation of the Labor-Management Reporting and Disclosure Act of 1959 (Labor-Management Act) (29 U.S.C. §§ 401-531 (2012)) as well as making various allegations about their disciplinary hearing.[1] In a letter back to them, the United States Department of Labor stated that it had "conducted an investigation of [their] allegations" but "concluded that no violations of the [Labor-Management Act] occurred." The United States Department of Labor initially found that ATU's hearing process complied with the Labor-Management Act. The United States Department of Labor also found that Ernest Jones and Walker "were provided reasonable time to prepare a defense to the charges" and "were in fact given a full and fair hearing." The United States Department of Labor noted that Ernest Jones and Walker alleged, in part, that they "were not allowed to have an attorney present at the hearing, and the hearing officer was not impartial" but the department rejected those allegations and determined that the hearing "was held in accordance with Section 12.5 of [ATU's constitution]." Specifically in regard to the attorney claim, the United States Department of Labor observed that its investigation "did not substantiate [their] claim that [they] were improperly denied representation at the hearing. Although the ATU denied [their] request to postpone the hearing for [them] to retain counsel to review the documents provided as

---

[1] Section 411(a)(5) of Labor-Management Act (29 U.S.C. § 411(a)(5) (2012)) provides safeguards against improper disciplinary action by preventing any "member of any labor organization" from being "fined, suspended, [or] expelled," without being "(A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

potential evidence against [them], this decision was not unreasonable given [they] made the request four business days before the hearing began." The United States Department of Labor additionally noted that the Labor-Management Act did not provide a right to counsel during union disciplinary proceedings.

¶ 21    Thereafter, ATU's international president and Local 241's president and business agent demanded that the defendants satisfy their obligations to pay the fine imposed against them following their hearing and adoption by ATU's general executive board of the hearing officer's findings and recommendations.

¶ 22                              B. The Instant Litigation

¶ 23    In August 2017, ATU and Local 241 filed a complaint in the circuit court against Harris, Hodges, Edward Jones, Venita Jones, Reyes, Seaton, Stevens, Taylor and Walker, among several other defendants, which they later amended in February 2018. In the amended complaint, ATU and Local 241 brought breach of contract claims against each of the defendants, alleging that ATU's general executive board determined that they violated Local 241's bylaws and ATU's constitution, which resulted in the imposition of a fine. According to ATU and Local 241, because of the defendants' contracts with ATU, they were contractually obligated to pay their fines, but they had refused to do so despite demands. ATU and Local 241 levied a count against each defendant, and in each of those counts, ATU and Local 241 sought an order finding each defendant liable to them in the amount of the fine that had been imposed by ATU's general executive board— or the exact amount recommended by Garland. ATU and Local 241 attached to their amended complaint a copy of section 12.5 of ATU's constitution, which discussed the disciplinary process of local union members.

¶ 24    In February 2019, ATU and Local 241 filed a motion for summary judgment against Reyes, Walker, Stevens, Venita Jones, Ernest Jones and Hodges. ATU and Local 241 did not file a motion against Harris, Seaton or Taylor because, at the time, they were in default. In the motion, ATU and Local 241 asserted that all of the defendants had a full hearing on the charges against them and following that hearing, they were found guilty of multiple offenses for violating ATU's constitution and Local 241's bylaws, and fined accordingly. ATU and Local 241 observed that all of the defendants were given the opportunity to testify, introduce evidence, call and cross-examine witnesses, and make statements on record during the hearing. ATU and Local 241 argued that, under Illinois law, courts recognize the power of a union to police its own and uphold judgments of a union so long as there was due process. Because the defendants were given an opportunity to defend themselves against the charges and because the defendants were bound by their union contracts, which gave ATU the ability to police its own members and impose penalties, ATU and Local 241 argued that summary judgment was appropriate on their breach of contract claims. ATU and Local 241 attached to their motion the decision of Garland, the initial demand letters from ATU's international president that the defendants repay the overpayments, the letters charging Reyes, Walker, Stevens, Venita Jones, Ernest Jones and Hodges with the violations, and the demand letters from ATU's international president and Local 241's president and business agent that the defendants satisfy their obligations to pay the fine imposed against them following their hearing and adoption by ATU's general executive board.

¶ 25    Up until the time that ATU and Local 241 filed their motion for summary judgment, the defendants had been representing themselves. But following ATU and Local 241's motion for summary judgment, an attorney filed an appearance on behalf of all of the defendants pertinent to this appeal. The attorney also successfully moved the circuit court to vacate the default orders

entered against Harris, Seaton and Taylor. On March 7, 2019, the circuit court continued the case for a status hearing and ordered the defendants to "describe any discovery needed to be conducted" at the hearing. Two weeks later, at that status hearing, the circuit court granted the defendants leave to file joint affirmative defenses and counterclaims, struck the pending trial date, and entered and continued ATU and Local 241's motion for summary judgment.

¶ 26 On March 29, 2019, the defendants filed joint affirmative defenses, including bad faith and unclean hands on the part of ATU. In addition, the defendants filed counterclaims of breach of fiduciary duty and breach of contract against ATU. The defendants alleged, in part, that Rodney Richmond, a former trustee of Local 241 between 2003 and 2005 and former vice president of ATU, told the new executive board, which many of the defendants comprised, that they could increase their rates of pay to reflect updated collectively bargained pay rates. Additionally, the defendants claimed that the practice of giving Christmas gratuities had preceded their time on the executive board and ATU never told them that the practice violated Local 241's bylaws despite the fact the practice occurred during the time when Local 241 was under ATU's trusteeship. Further, the defendants claimed that William Foley, a trustee of Local 241 at one time and the one who oversaw Local 241's finances, improperly directed hundreds of thousands of dollars to a company he worked with thereby defrauding Local 241.

¶ 27 In their breach of fiduciary duty claim, the defendants asserted that ATU owed a fiduciary duty to Local 241, but breached that duty when it appointed trustees who defrauded Local 241 by, among other actions, mismanaging the local pension fund, telling Local 241's executive board to implement the pay structure that it later claimed was improper, and failing to advise the new executive board that the past practice of the Christmas gratuities was a violation of Local 241's bylaws. As a result, the defendants alleged that ATU's breach of its fiduciary duty caused them to

be suspended from the executive board, fined and restricted from participating in future elections. In their breach of contract claim, the defendants claimed that ATU breached its constitution when it failed to follow its written procedures when initiating charges against them and during the appeals process.

¶ 28    ATU moved to dismiss the defendants' affirmative defenses and counterclaims. Following briefing on ATU's motion, the circuit court dismissed the defendants' affirmative defenses, but allowed their counterclaims to proceed. In September 2019, during a case management conference, the circuit court entered an order setting the case for trial in January 2020 and ordered all discovery to be completed by November 27, 2019. Additionally, the court set a briefing schedule on ATU and Local 241's motion for summary judgment, which required the briefing to be completed by the end of October 2019 and set the matter for a ruling in early November 2019.

¶ 29    In October 2019, the defendants responded to ATU and Local 241's motion for summary judgment, highlighting what they perceived to be disputed material facts. First, the defendants argued that there was a dispute as to whether ATU adhered to its constitution when bringing the charges against them. To this end, the defendants observed that ATU's constitution required at least two signatures from ATU officers when bringing charges, but noted that the charging letters only contained one signature. Second, the defendants argued that there was a dispute as to whether ATU amended its constitution to remove an accused's right to an attorney just prior to bringing forth the charges against them. According to the defendants, when they left their positions as executive board members, ATU's constitution entitled them to an attorney during a disciplinary hearing, whereas the version of ATU's constitution in effect when the hearing occurred did not. Third, they argued that there was a dispute as to whether Richmond, the ATU-appointed trustee of Local 241, told them to implement the pay structure they were later charged and fined for

implementing. Fourth, they argued that there was a dispute as to whether they were advised of their appeal rights. Additionally, the defendants observed that Stevens was not even a board member when the hourly pay rate increase for board members occurred and thus, he could not have possibly contributed to the allegedly improper decision to increase board member pay.

¶ 30    Based on these alleged disputed facts, the defendants contended there were genuine issues of material fact as to whether ATU was entitled to the fines it imposed against them. Although the defendants acknowledged the well-established principle of law that the judiciary is hesitant to intervene into the affairs of unions, they asserted that if the hearing ATU conducted was improperly brought and unfairly administered, these were issues that required judicial intervention. Thereafter, ATU and Local 241 filed a reply in support of their motion for summary judgment.

¶ 31    Also in October 2019, the defendants propounded their first set of interrogatories and requests for production upon ATU. By November 5, 2019, while ATU and Local 241's motion for summary judgment was pending, the defendants had not received any responses to their discovery requests. As such, their counsel e-mailed ATU's counsel pursuant to Illinois Supreme Court Rule 201(k) (eff. July 1, 2014) to discuss his lack of a response and request the scheduling of depositions in the case. ATU's counsel did not respond, so two days later, the defendants filed a motion to compel responses to their discovery requests, arguing that ATU's failure to timely respond had impeded their right to conduct discovery and properly prepare for trial.

¶ 32    On November 18, 2019, the circuit court entered an order granting ATU and Local 241's motion for summary judgment on the breach of contract claims in their complaint. After reviewing the principles of law on motions for summary judgment and the intersection of judicial intervention of union disciplinary matters, the court noted some indisputable facts of the case. The court observed that there was no dispute that a union constitution and bylaws constituted a contract

between the organization and its members, and that individuals who become members of a union were bound by all the rules and regulations of the union, including disciplinary provisions. The court observed that ATU's constitution provided the mechanisms for disciplining instances of malfeasance, and to that end, Garland found that the executive board members' compensation was improperly inflated. According to the court, regardless of if the defendants were the cause of that improper inflation or were innocent beneficiaries, once ATU's general executive board adopted Garland's findings and demanded repayment, the defendants were required to make restitution. The court concluded that their failure to do so constituted a breach of contract.

¶ 33    Additionally, the circuit court highlighted the various matters that the defendants claimed were genuine issues of material fact that would preclude summary judgment, but found they could not defeat ATU and Local 241's right to summary judgment. For one, the court observed that ATU's constitution contained a two-signature requirement for charges, but asserted such a challenge should have been made to Garland. Second, the court noted the alleged issue of which version of ATU's constitution was applicable, but found that the defendants failed to provide a transcript of the hearing to show they had been denied the right to counsel. Lastly, the court remarked that the only issue that the defendants presented that "potentially had merit" was about their appeal rights, but the court highlighted that one of the correspondences sent to the defendants explicitly informed them that " '[a]ny such decision may be appealed to the International Convention.' " Overall, the court found that the defendants were given notice of the allegations against them, apprised of their rights and provided a sufficient opportunity to present their defenses at the hearing. The court added that, "[a]bsent procedural irregularities, this Court gives high deference to the findings of Garland who was in the position to weigh the credibility of the witnesses and the evidence." As such, the court concluded that the defendants failed to make the

required payments on the fines assessed against them, and ATU and Local 241 were entitled to summary judgment on the claims in their complaint.

¶ 34    On the same date, the circuit court ordered ATU to respond to the defendants' written discovery requests by November 22, 2019, with respect to the defendants' counterclaims, and that the court would hold a case management conference three days after the deadline.

¶ 35    On November 21, 2019, ATU sent the defendants the discovery. The defendants' counsel e-mailed ATU's counsel and raised various issues with the discovery response, including that ATU was allegedly withholding documents on the basis of privilege without providing a privilege log, allegedly withholding documents on the basis of " 'relevance,' " which was not a proper basis under the discovery rules, and allegedly withholding documents in the possession of Local 241. ATU's counsel did not respond. Two days later, the defendants' counsel e-mailed ATU's counsel pursuant to Rule 201(k) to resolve these issues, but ATU's counsel did not respond.

¶ 36    On November 25, 2019, the defendants filed an emergency motion to compel responses to their discovery requests, to permit the taking of depositions and to extend the deadline to complete discovery. In the motion, the defendants detailed the history of the case, in particular as it related to discovery and argued that ATU had repeatedly failed to comply with numerous court orders regarding scheduling and case management. Additionally, they contended that ATU's delay in providing timely responses to their discovery requests had impeded their right to conduct full discovery into their claims, which would irreparably harm their case. The circuit court granted the motion and required ATU to produce a privilege log, meeting minutes and communications from 2003 until July 2014, payroll summary reports and sheets, financial reports concerning Local 241, and any documents used in bringing the charges against the defendants within approximately a

week. The court further extended the discovery deadline to mid-January and required ATU to advise about the availability of certain individuals for depositions.

¶ 37    Around this time, ATU and Local 241 moved for summary judgment on their breach of contract claims against Harris, Seaton and Taylor—who were in default at the time ATU and Local brought their initial motion for summary judgment—on the same basis as in their motion for summary judgment against the other defendants. Consistent with the circuit court's prior order granting summary judgment, it granted ATU and Local 241's motion.

¶ 38    On December 3, 2019, the defendants sent Local 241 a subpoena by certified mail requesting: "All meeting minutes (board and general membership) from 2003 until present;" "All payroll summary records for [them] during the time they served any role on the board of the local union;" "All financial reports (including Financial Secretary/Treasurer reports) sent by the local union to the international union (ATU) from 2003 until present;" and "All notices/memos/communications sent by [ATU] to Local 241 from 2003 until present." The subpoena set a return date of 10 days afterward.

¶ 39    On December 5, 2019, ATU moved for summary judgment on the defendants' counterclaims. ATU argued that the defendants' first counterclaim—breach of fiduciary duty— was essentially them attempting to relitigate what occurred during the hearing or what they could have argued to Garland, which was improper to do in the circuit court. Additionally, ATU asserted that this counterclaim was unsupported by the facts and only allegedly affected three of the five charges of which they were found guilty. Regarding the defendants' second counterclaim—breach of contract—ATU contended that it was barred by *res judicata* because any issue based on how the charges were brought against them could have, and should have, been brought during the hearing. Moreover, ATU posited that the uncontested facts showed that ATU followed its

constitution throughout the disciplinary process. ATU supported its motion with substantial portions of the record from the disciplinary proceeding, including the various correspondences sent to the defendants and the hearing transcript, as well as an affidavit from Daniel Smith, ATU's assistant general counsel, who averred to the assertions made in the motion. Additionally, ATU included an excerpt from section 12.5 of its constitution along with the cover page from its constitution that showed the excerpt from was the 2013 version of its constitution.

¶ 40     A week later, the defendants filed a motion to reconsider the circuit court's grant of summary judgment in favor of ATU and Local 241 based on new evidence that allegedly showed that ATU denied them a fair hearing and repeatedly acted outside the scope of its constitution. That new evidence included the transcript of the hearing that ATU had attached to its motion for summary judgment on the defendants' counterclaims. According to the defendants, the hearing, in conjunction with an amendment to ATU's constitution in 2013, showed that they were entitled to an attorney at the hearing and repeatedly raised objections to their lack of one. Based on the hearing transcript and the various objections raised by the defendants to the process, they claimed this was evidence of a genuine issue of material fact that should have precluded the entry of summary judgment in favor of ATU and Local 241. The defendants further posited that the Christmas gratuities were a process implemented by ATU itself, not them, and the pay raises were in accordance with the bylaws and approved by ATU. They noted that ATU still had not produced minutes from the meeting in January 2006 where the allegedly improper vote to increase their compensation occurred. Lastly, the defendants highlighted additional new evidence that they alleged supported their claims that the investigation and charges against them were merely a pretext to retaliate against them for their investigation of William Foley, a former Local 241

trustee, their opposition to ATU's current international president and to scapegoat them "due to fears" of a takeover of Local 241 by the International Brotherhood of Teamsters.

¶ 41 The defendants attached to their motion various documents. One was an affidavit from Darrell Jefferson, the former president and business agent of Local 241, who had been a board member from January 2000 until September 2011. Jefferson averred that the practice of paying the Christmas gratuities took place before 2003 and was re-implemented in 2004 while Local 241 was under a trusteeship led by Rodney Richmond. The defendants also included an affidavit from Michael Taylor, one of the defendants, who averred that, in January 2006, the executive board voted to increase board members' pay "because the local union had negotiated several pay issues for the general membership, but those pay increases were never updated to be applied to local union board members." Taylor stated that Richmond advised the board members that they could not "underpay" themselves and that they "had to update[]" their pay "to catch up with previously collectively bargained for pay increases for the general membership." The defendants further attached a document titled "Report to the Executive Board From the Special Committee on Zero Access," which was an investigatory document about a company called Zero Access with which William Foley was associated and which Local 241 apparently used to purchase various equipment. The investigation apparently uncovered various billing issues with Zero Access, including that its owner stated the company received $245,000 from Local 241 yet Local 241's records showed disbursements to Zero Access of approximately $446,000. The special committee on Zero Access of Local 241's executive board recommended that "charges be brought against [Foley] at both the international level and the criminal level."

¶ 42 Additionally, the defendants attached excerpts from the transcript of their hearing. For instance, during the hearing, Lonnie Walker, one of the defendant's, asked Garland, the hearing

officer, if the hearing was proceeding in accordance with the "old constitution or the new constitution?" Daniel Smith, ATU's assistant general counsel, said that events that "happened under the 2010 constitution or the 2007 constitution or the 2004 constitution we'll [*sic*] be governed by those constitutions." Nathaniel Scurlock, a defendant who is not a party to this appeal, responded by asking "shouldn't we have representation as an attorney, not representing ourselves, as the old constitution states." Garland replied, "I understand. And your objection will be duly noted." Thereafter, Scurlock asserted his *Weingarten* rights and began arguing that those rights were being violated by not allowing him to have his attorney present for the hearing while ATU had one for itself.[2] Michael Taylor, one of the defendants, also spoke up and asserted that this case should have proceeded according to section 12.6 of ATU's constitution because the charges originated from a trusteeship. In addition, another portion of the transcript showed that an unnamed defendant stated: "A member asked you was I entitled – or were we entitled to an attorney. And I think the question he answered was no." The unnamed defendant highlighted section 12.5 from ATU's constitution in 2004 where there was a right to counsel and remarked "[b]ut all we heard him say we weren't entitled to it." It is unclear if the unnamed defendant was referring to Garland or Smith. Lastly, the transcript showed that Walker made an opening statement where he posited that the hearing was unfair and unjust based on his *Weingarten* rights.

¶ 43    Additionally, the defendants attached as an exhibit excerpts purportedly from section 12.5 of the 2004, 2007 and 2010 ATU constitutions and as a separate exhibit excerpts purportedly from section 12.5 of the 2013 ATU constitution. As stated in the excerpts purportedly from the 2004,

---

[2] In *NLRB v. J. Weingarten, Inc.* 420 U.S. 251, 267 (1975), the United States Supreme Court held that an employer violated the National Labor Relations Act (29 U.S.C. § 158(a)(1)) by denying an employee's request for union representation during an investigatory interview where that employee reasonably believed that the interview could result in disciplinary action.

2007 and 2010 ATU constitutions, individuals charged by ATU with malfeasance or nonfeasance "shall have the right to be represented by counsel." As stated in the excerpt purportedly from the 2013 ATU constitution, individuals charged by ATU with malfeasance or nonfeasance "shall have the right to be represented by ~~counsel~~ <u>any member not serving on the trial board, as hearing officer, or on the [general executive board of ATU]</u>." (Emphasis added.)

¶ 44    Thereafter, the circuit court entered a briefing schedule on ATU's motion for summary judgment on the defendants' counterclaims and the defendants' motion to reconsider. As part of the order, the court stated that the "deposition of [Garland] is to go forward keeping in mind 'deliberative privilege.' "

¶ 45    On December 18, 2019, Local 241 filed a motion to quash the defendants' third-party subpoena. Local 241 claimed that the defendants served the subpoena on them on December 9, 2019, with a return date for only a few days later and therefore argued the subpoena was untimely served under various Illinois Supreme Court rules. Local 241 further argued that the subpoena sought documents that were more readily available to ATU, and as such, the request was a fishing expedition on a non-party. Additionally, Local 241 contended that the requested documents were irrelevant to the claims and the request was vague, overbroad and unduly burdensome. Local 241 attached an affidavit from Toi Bowers, its financial and recording secretary-treasurer at the time, who averred that the local affiliate received the subpoena on December 9, 2019.

¶ 46    The defendants filed a response to Local 241's motion, arguing why the subpoena was timely, why the request for documents was not vague, overbroad and unduly burdensome, and why the documents were relevant. The defendants claimed that records from Local 241 were necessary because they would show how ATU "scapegoated" them in order to retaliate against them for complaining about the misappropriation of funds by trustees, which ATU in part had used to help

defend against a "raid" by the International Brotherhood of Teamsters of local affiliates, including Local 241, and for opposing the candidacy of ATU's international president. Additionally, the defendants contended that ATU and Local 241 had not complied with discovery requests in good faith throughout the litigation and requested an evidentiary hearing on the issue of good faith.

¶ 47 On January 2, 2020, the circuit court entered and continued Local 241's motion to quash "until the court decides on pending motions to reconsider and for summary judgment on the counterclaims." The court added that Local 241 was "not obligated to produce documents during this time. Remaining discovery is to go forward, with the deadline still set for January 15, 2020."

¶ 48 That same day, ATU and Local 241 responded to the defendants' motion to reconsider, arguing that Illinois Supreme Court Rule 191(b) (Jan. 4, 2013) set forth a procedure for responding to summary judgment motions when a party claimed that it was missing critical information in discovery. To this end, ATU and Local 241 argued that the defendants did not follow this procedure and their motion was essentially "a request for a second bite at the apple."

¶ 49 The next day, the defendants responded to ATU's motion for summary judgment on their counterclaims. Initially, they argued that it would be improper to grant summary judgment to ATU while discovery was still open and while ATU and Local 241 had repeatedly engaged in dilatory tactics in order to obstruct discovery. The defendants next argued that the evidence produced by them supported their claims that ATU arbitrarily charged them to cover up their own misconduct and "lay blame at a weaker party's door." The defendants highlighted various evidence it asserted raised serious questions of material fact regarding the intentions and actions of ATU officials. First, it highlighted evidence that William Foley, an ATU trustee defrauded Local 241 with either "the assistance and/or tacit permission of ATU officials" and was able to defraud the union and misallocate hundreds of thousands of dollars. Despite this, the defendants noted that Foley had

never been charged, removed from office or disciplined. Second, the defendants pointed to alleged evidence that ATU, through Richmond, had negotiated the pay increases with which the defendants were later charged for implementing. Given this and other evidence, the defendants claimed that they had clearly demonstrated with evidence that ATU failed to act in good faith and thus, their claims that ATU's procedures did not comport with due process were sufficient to preclude summary judgment.

¶ 50    A week later, the defendants filed an emergency motion to compel responses to certain questions posed during Garland's deposition for which allegedly improper privileges were asserted as well as to request an evidentiary hearing on the remaining discovery issues. In the motion, the defendants argued that Garland improperly asserted an attorney-client privilege and the "deliberative process privilege" throughout the deposition. The defendants later re-filed the motion as a regular motion per the circuit court's instruction.

¶ 51    Subsequently, the defendants filed a reply in support of their motion to reconsider, in part arguing that there was no record that the defendants were ever served with the charges against them. They provided their own affidavits, wherein many of them averred to never receiving the charging document signed by Perez and Barnes, and being denied their right to counsel at the hearing. Additionally, one affidavit was titled "Illinois Supreme Court Rule 191(b) Affidavit of Michael Taylor," wherein Taylor requested the circuit court stay judgment on the pending motions until the transcripts from the depositions of Tyler Home, the internal auditor for ATU in 2011, and Perez, one of the trustees who investigated Local 241's finances that led to the defendants being charged, were available and until the affidavit of Marvella Singleton, the administrative assistant to the financial secretary-treasurer of Local 241 at the times relevant to the facts of this case, was obtained.

¶ 52    ATU then filed its reply in support of its motion for summary judgment on the defendants' counterclaims. Two days later, the defendants filed a motion to supplement the record in support of their motion to reconsider with the depositions from Home and Perez as well the affidavit from Singleton. In Home's deposition, he testified about various aspects of ATU, including an agreement entered into between the CTA, ATU, Local 241 and ATU Local 308—another local affiliate of ATU—which was titled "Amendment to Section 3.9(b) of the Retirement Plan for Chicago Transit Authority Employees." This agreement was signed by Rodney Richmond in January 2005 as trustee for Local 241. In Perez's deposition, he testified about his appointment as trustee of Local 241 and that he had heard "rumors" of misconduct committed by William Foley, an ATU trustee, but he was unaware if ATU ever took actions based on those rumors. Additionally, Perez testified that he was present at the defendants' 2014 hearing, but he did not remember having any "sidebars" with Garland and ATU's counsel outside the presence of the defendants. Perez also remarked that, at various points, the International Brotherhood of Teamsters had attempted to "raid" ATU of its local affiliates.

¶ 53    Lastly, in Singleton's affidavit, she averred that the Christmas gratuities were standard practice while she worked for Local 241 and had been approved by a general membership vote. She also stated that the executive board investigated Foley and a company called Zero Access, and reported findings to ATU, but she was unaware if Foley had ever been punished. In fact, she remarked that, to her knowledge, Foley was allowed to retire with full benefits. Singleton also averred that, around 2006, Local 241 moved offices and during this transition, "many documents were being shredded."

¶ 54    On January 23, 2020, the circuit court entered and continued the defendants' motion to compel and for an evidentiary hearing "until after the court rules on remaining dispositive motions."

¶ 55    Four days later, the circuit court entered a written order on the pending motions. The circuit court first addressed the defendants' motion to reconsider. The court highlighted that the defendants had moved for reconsideration based on new evidence, in particular multiple versions of section 12.5 of ATU's constitution, which detailed the internal disciplinary procedures. However, the court found the versions of ATU's constitution to be without foundation and unauthenticated where "[t]he snippets provided [were] lumped together as one exhibit with no indication of what they [were] excerpted from or even what year [was] applicable." The court found the attachments were not admissible evidence it could consider. But "[e]ven if" it could consider the evidence, nothing attached to their motion established that they were denied their right to counsel. The court highlighted the excerpts from the hearing transcript, including the discussion of counsel and *Weingarten* rights, but found there was "no evidence in the record that defendants were denied their right to have a union representative in with them" or that "any member was denied the opportunity to have their own attorney present."

¶ 56    The circuit court then observed that the remaining part of the defendants' motion to reconsider went to the merits of the underlying hearing and Garland's findings. To this end, the court noted the affidavits from Jefferson and Taylor did not raise any new evidence and that past practices were not a shield to a finding of impropriety by Garland. The court concluded that, regardless of how the defendants obtained improper compensation, "the failure on the part of these defendants to return the amounts of ill gotten money is a breach of contract." Furthermore, the court observed that the defendants had also provided evidence that the International Brotherhood

of Teamsters was attempting a takeover of ATU's affiliates and that the actions against the defendants were part of a retaliation scheme by ATU. However, the court did not find this argument appropriate for its review. Consequently, the court denied the defendants' motion to reconsider.

¶ 57 The circuit court next addressed ATU's motion for summary judgment on the defendants' counterclaims. Concerning their claim for breach of fiduciary duty, the court observed that the defendants alleged that ATU owed Local 241 a fiduciary duty, but found "no allegations and no supporting evidence [ATU] owed a fiduciary duty to these defendants specifically." Additionally, the court highlighted the various evidence that the defendants presented to prove an elaborate scheme to retaliate against them, but asserted that none of it "raise[d] issues of fact relating to a breach of fiduciary duty." The court again reiterated that, regardless of what the defendants alleged about past practice and the advice from others, "none of that absolve[d] defendants of their obligation to return the funds after the malfeasance was discovered." Lastly, concerning the defendants' claim for breach of contract, the court found nothing in the record supported their contention that they were denied due process by ATU for allegedly failing to follow its written procedures when initiating the charges against them. The court noted that the United States Department of Labor also had found no merit to their claims of inadequate due process. Consequently, the court granted ATU's motion for summary judgment on the defendants' counterclaims. Lastly, based on its previous two rulings, the court found the remaining pending motions moot.

¶ 58 Thereafter, the defendants timely appealed various rulings from the circuit court.

¶ 59 II. ANALYSIS

¶ 60 A. Summary Judgment

- 27 -

¶ 61    The defendants raise various claims of error concerning the circuit court's rulings in this case. We first address their contentions related to the summary judgment motions entered in favor of ATU and Local 241 on their claims against the defendants and on the motion for summary judgment entered in favor of ATU on the defendants' counterclaims.

¶ 62    Summary judgment is appropriate where the pleadings, depositions, affidavits, and admissions on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25. In determining whether a genuine issue of material fact exists, the court strictly construes the pleadings, depositions, and affidavits against the moving party and liberally in favor of the nonmoving party. *Carney*, 2016 IL 118984, ¶ 25. A genuine issue of material fact exists "where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. We review summary judgment rulings *de novo*. *Carney*, 2016 IL 118984, ¶ 25.

¶ 63    In addition to summary judgment, this case involves a question about judicial intervention of union proceedings. The constitution and bylaws of a union are a contract. *Diamond v. United Food & Commercial Workers Union Local 881*, 329 Ill. App. 3d 519, 524 (2002). And any individual who joins a union agrees, either expressly or impliedly, to follow all the rules and regulations adopted by the union. *Id.* "The constitution or bylaws of a union may, and often do, contain provisions for the resolution of disputes that occur within the organization." *Id.* And, pursuant to such resolutions, unions may sue in state court to collect fines imposed on union members. *Local 165, International Brotherhood of Electrical Workers, AFL-CIO v. Bradley*, 149 Ill. App. 3d 193, 202 (1986). But the judiciary's review of such resolutions is unique. This is

because unions are unincorporated associations. *1550 MP Road LLC v. Teamsters Local Union No. 700*, 2019 IL 123046, ¶ 25. Long ago, our supreme court remarked in relation to unincorporated associations that: "Courts will not interfere to control the enforcement of by-laws of such associations, but they will be left free to enforce their own rules and regulations by such means and with such penalties as they may see proper to adopt for their government." *Engel v. Walsh*, 258 Ill. 98, 103 (1913). Similarly, our supreme court has concluded that, generally, "courts in the absence of circumstances of unfairness will not intervene in questions involving the enforcement of bylaws and matters of discipline in voluntary associations." *American Federation of Technical Engineers, Local 144 v. La Jeunesse*, 63 Ill. 2d 263, 268 (1976). Our supreme court has re-affirmed this principle of law in *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 31, and our appellate courts have done so as well in *Diamond*, 329 Ill. App. 3d at 524-25, *Finn v. Beverly Country Club*, 289 Ill. App. 3d 565, 568 (1997) and *Blackshire v. N.A.A.C.P., Inc.*, 285 Ill. App. 3d 561, 564-65 (1996).

¶ 64    Given the judiciary's hesitancy to intervene in the rules and regulations of unincorporated associations, "courts will interfere in the internal affairs of an unincorporated association only in narrow circumstances." *Diamond*, 329 Ill. App. 3d at 525. To this end, we only have the "power to consider the basic fairness of disciplinary actions by voluntary unincorporated associations." *Bradley*, 149 Ill. App. 3d at 210. As such, "[j]udicial review is limited to whether an exercise of power by the association conformed with its own internal rules or whether an association violated a member's fundamental right to a fair hearing" (*Diamond*, 329 Ill. App. 3d at 525) or if there "mistake, fraud, collusion or arbitrariness" in the process. *Poris*, 2013 IL 113907, ¶ 31. However, at all times, we must give deference to a union to interpret its own constitution or bylaws. *Diamond*, 329 Ill. App. 3d at 526.

¶ 65                           1. ATU and Local 241's Breach of Contract Claims

¶ 66    The defendants first contend that the circuit court erred in granting ATU and Local 241's motion for summary judgment on their breach of contract claims where the court erred in its application of the law to the facts.

¶ 67    In ATU and Local 241's complaint, they asserted claims of breach of contract against each of the defendants. In order to establish a breach of contract, the plaintiff must prove "the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and resultant damages or injury to the plaintiff." *Razor Capital v. Antaal*, 2012 IL App (2d) 110904, ¶ 30. As we have discussed above, any individual who joins a union agrees, either expressly or impliedly, to follow all the rules and regulations adopted by the union in a constitution or bylaws. *Diamond*, 329 Ill. App. 3d at 524. As such, the constitution and bylaws of a union are a contract (*id.*), and thus, in this case, a valid and enforceable contract existed between the parties.

¶ 68    Additionally, it is clear that the defendants breached their contracts with ATU and Local 241 when they did not pay their fines that were imposed following the hearing. Notwithstanding the issue of the amendment to ATU's constitution, in all versions that have been referred to in this appeal, section 12.5 has provided that ATU's general executive board may fine members for violations and that decision is final unless appealed to the International Convention. In this case, Ernest Jones, Seaton, Taylor, Walker and Harris unsuccessfully appealed to the International Convention while Hodges, Venita Jones, Reyes and Stevens did not exercise their appeal rights. The fines imposed against the former defendants became final once the International Convention denied their appeals, and the fines against the latter defendants became final once ATU's general executive board adopted Garland's findings. But, regardless, all of the fines became final, and when the defendants refused to comply and pay their fines, as required by ATU's constitution,

they breached their contracts with ATU and Local 241. And there were undoubtedly damages as a result of their breaches because ATU and Local 241 had not been paid the money the defendants owed as a result of the fines, which, themselves, were based on improper compensation the defendants received over the course of several years.

¶ 69    The critical issue for ATU and Local 241's breach of contract claims is whether they performed their obligations under the contract. And in arguing that they did not, the defendants raised before the circuit court various manners in which ATU allegedly did not comply with its constitution such as the two-signature requirement for the charging documents, the lack of notice of their right to appeal and the denial of an attorney at the hearing. Concerning the two-signature requirement, section 12.5 of ATU's constitution consistently required "[c]harges against any member alleging violations of the provisions of this section or of any provisions of [ATU's constitution] may be filed with [the general executive board] upon the signature of at least two officers." In the circuit court, the defendants pointed to the letters from ATU's international president, which had the subject of "Charges Under International Constitution and General Laws Section 12.5, Discipline of L.U. Members," and noted that only one signature appeared in this correspondence. Yet, in July 2014, the trustees of Local 241 sent a signed charging document to ATU's general executive board for each defendant detailing that he or she had engaged in six counts of both malfeasance and nonfeasance while in office as well as serious acts of financial malpractice and administrative mismanagement, all allegedly in violation of ATU's constitution, Local 241's bylaws, the policies of ATU and generally accepted practices. In concluding the charging document, the trustees requested that the general executive board authorize the issuance and service upon the defendants of a complaint detailing the charges and directing a hearing to be held in the matter. There has been no dispute ever that Barnes and Perez, Local 241's trustees,

were officers of ATU, and indeed, in the defendants' joint affirmative defenses and counterclaims, they acknowledged that Barnes was an officer of ATU and that Perez was ATU's international vice president. As such, there was no genuine issue of material fact that the defendants were charged appropriately. Although the charging documents from the trustees to the general executive board were not in the record at the time the circuit court granted ATU and Local 241's motion for summary judgment—they were included in the record later during the litigation—we may affirm the court's judgment on any basis supported by the record. See *Redland Insurance Co. v. Lerner*, 356 Ill. App. 3d 94, 98 (2005) ("[W]e may affirm a grant of summary judgment on any basis appearing in the record, regardless of whether the lower courts relied upon that ground.").

¶ 70    At all relevant times, section 12.5 of ATU's constitution further stated that "[a] copy of such charges shall be served upon the member or members accused of violations." And to that end, on appeal, the defendants claim that there was a genuine issue of material fact as to whether they were properly served with a copy of the charges. However, the defendants did not raise this claim in the circuit court in opposition of ATU and Local 241's motion for summary judgment. The only argument the defendants specifically made with regard to being properly charged was in relation to the two-signature requirement. Indeed, in granting ATU and Local 241's motion for summary judgment, the circuit court only addressed that argument. By not making the argument regarding the *service* of the charges on them in opposition of ATU and Local 241's motion for summary judgment, the defendants deprived the circuit court an opportunity to address the argument when ruling on the motion. Consequently, any argument about the service of the charges is forfeited insofar as it relates to the propriety of the circuit court granting ATU and Local 241's motion for summary judgment on their claims. See *BMO Harris Bank, N.A. v. Malarz*, 2021 IL App (2d) 190984, ¶ 18. Regardless, even if the defendants were not served with the actual charging

document signed by Perez and Barnes, the defendants were nonetheless sent correspondences from ATU's international president that detailed the exact charges verbatim as contained in the charging document signed by Perez and Barnes. "[D]isciplinary proceedings conducted by voluntary associations do not require strict compliance with judicial standards of due process. Instead, the accused member is entitled to a hearing before 'fair and impartial tribunal.' " *Butler v. USA Volleyball*, 285 Ill. App. 3d 578, 583 (1996) (quoting *Van Daele v. Vinci*, 51 Ill. 2d 389, 394-95 (1972)). And a fair and impartial tribunal requires merely sufficient notice of the charges. *Id.* There can be no question that the correspondences sent by ATU's international president that detailed the exact charges verbatim as contained in the charging document signed by Perez and Barnes provided these defendants sufficient notice of the charges.

¶ 71     Concerning the defendants' appeal rights, the record is replete with references to the defendants being informed of the right to appeal. For one, in the correspondences sent by ATU's international president to each defendant that notified them of the charges against them, ATU's international president informed them of the disciplinary procedures, including that: the hearing officer would issue a report to ATU's general executive board; ATU's general executive board would ultimately determine whether each defendant was guilty; and ATU's general executive board could impose various penalties. These correspondences further informed the defendants that "[a]ny such decision may be appealed to the International Convention." Additionally, after ATU's general executive board adopted Garland's findings and recommendations, ATU's international president notified each defendant of his or her offenses, including that he or she had "the right to appeal these findings and penalties to the [International] Convention and have the case fully considered and acted upon by the Convention." Although these post-hearing correspondences were not in the record when the circuit court granted ATU and Local 241's motion for summary

judgment—they were included in the record later during the litigation—we may affirm the court's judgment on any basis supported by the record. See *Lerner*, 356 Ill. App. 3d at 98. Furthermore, five of the defendants did actually appeal to the International Convention. As such, there was no genuine issue of material fact that the defendants were informed of their appeal rights.

¶ 72    With regard to the defendants' being denied an attorney at the hearing, as the circuit court correctly noted, there was nothing in the record at the time to substantiate this claim by the defendants except the mere conclusions by them that they were denied the right to counsel. The scope of our review of a motion for summary judgment "is limited to the record as it existed when the circuit court ruled" (*Campos v. Campos*, 342 Ill. App. 3d 1053, 1066 (2003)), except, as noted, that we may *affirm* the court's judgment on any basis supported by the record. See *Lerner*, 356 Ill. App. 3d at 98. Moreover, when "determining whether factual issues exist for purposes of a summary judgment motion, the court must ignore personal conclusions, opinions and self-serving statements and consider only facts admissible in evidence." *Reuben H. Donnelley Corp. v. Krasny Supply Co.*, 227 Ill. App. 3d 414, 421 (1991). As such, based on the record when the circuit court ruled on ATU and Local 241's motion for summary judgment, there was no genuine issue of material fact as to whether the defendants were denied their alleged right to an attorney at the hearing.

¶ 73    Lastly, in claiming there were genuine issues of material fact that precluded summary judgment for ATU and Local 241, as the circuit court observed, the defendants made various factual allegations that were extraneous to the issue at hand of whether they failed to pay their fines, as required by their union contracts. For example, they asserted that there was a genuine issue of material fact as to whether Rodney Richmond, an ATU-appointed trustee, told them to implement the pay structure they were later charged and fined for implementing. And, on appeal,

the defendants raise an additional one, such as a claim that there was a genuine issue of material fact as regarding the motivation behind the charges. These claims are not relevant to ATU and Local 241's breach of contract claims where the defendants were bound by contracts that gave ATU the ability to police its own and impose penalties for violations of its constitution and local affiliate's bylaws. These extraneous claims speak only to the underlying allegations against them, but in this litigation, the underlying allegations are irrelevant because the defendants were found to have engaged in behavior by a tribunal that Illinois courts recognize, and the defendants themselves contractually recognized, was empowered to make such findings.

¶ 74     In light of the foregoing, there was no genuine issues of material fact that ATU and Local 241 performed their obligations under the contracts with the defendants. Notably, the circuit court was the third tribunal to uphold the findings of Garland, as adopted by ATU's general executive board, and to find fairness in the disciplinary process. As noted, in Harris' appeal to the International Convention, which was consolidated with the other appeal, he argued about his lack of counsel during the hearing, but the International Convention nevertheless denied the appeal. Additionally, the United States Department of Labor dismissed the complaint of Ernest Jones and Walker, finding, in part, that the hearing complied with ATU's constitution and was fair. Because there was no genuine issue of material fact that ATU and Local 241 performed their obligations under the contracts, the defendants breached their contracts (see *Razor Capital*, 2012 IL App (2d) 110904, ¶ 30), resulting in ATU and Local 241 being entitled to judgment as a matter of law. Consequently, the circuit court properly granted summary judgment to ATU and Local 241 on their breach of contract claims.

¶ 75                    2. Motion to Reconsider Grant of Summary Judgment

¶ 76    The defendants next contend that the circuit court erred in denying their motion to reconsider its grant of summary judgment in favor of ATU and Local 241 on their breach of contract claims. "The purpose of a motion to reconsider is to bring the court's attention to (1) newly discovered evidence not available at the time of the hearing, (2) changes in the law, or (3) errors in the court's previous application of the existing law." *Peregrine Financial Group, Inc. v. TradeMaven, L.L.C.*, 391 Ill. App. 3d 309, 320 (2009). The circuit court has discretion in whether to grant a motion to reconsider, and we will not reverse its ruling unless the court has abused its discretion. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 347 (2002). This standard "is the most deferential standard of review" (*In re D.T.*, 212 Ill. 2d 347, 356 (2004)), and an abuse of discretion only occurs when the circuit court's ruling was unreasonable, arbitrary, or fanciful, or where no reasonable person would adopt the same view. *Blum v. Koste*r, 235 Ill. 2d 21, 36 (2009). In determining whether an abuse of discretion has occurred, the question is not whether the appellate court would have made the same decision as the circuit court (*State Farm Fire & Casualty Co. v. John*, 2017 IL App (2d) 170193, ¶ 18), but, rather, whether the court's ruling "exceeded the bounds of reason" or was "against logic." *Vanderhoof v. Berk*, 2015 IL App (1st) 132927, ¶ 84.

¶ 77    In arguing that the circuit court erred in denying their motion to reconsider, the defendants first argue that the court violated their procedural due process rights by *sua sponte* ruling that some of proffered new evidence—the various purported versions of ATU's constitution—was inadmissible, thereby depriving them of an opportunity to be heard. "In addressing a motion for summary judgment, a [circuit] court may not consider evidence or testimony that would not be admissible at trial." *Garland v. Sybaris Clubs International Inc.*, 2019 IL App (1st) 180682, ¶ 37. As such, in motions for summary judgment, "[b]asic rules of evidence require that a party lay a proper foundation for the introduction of a document into evidence." *People ex rel. Madigan v.*

*Kole*, 2012 IL App (2d) 110245, ¶ 47. "To properly authenticate a document, a party must present evidence that demonstrates that the document is what the party claims it to be." *Id.* "Without proper authentication and identification of the document, the proponent of the evidence has not provided a proper foundation and the document cannot be admitted into evidence." *Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 42 (2000). Thus, in considering a motion to reconsider a grant of summary judgment based on new evidence, the circuit court has a responsibility to ensure that the proffered new evidence is admissible, just as it does when presented with a normal motion for summary judgment. Here, the court found several pieces of alleged new evidence to be inadmissible for a lack of foundation and authentication. There is nothing improper about the court's action in this regard, and in fact, it was the court's responsibility to ensure that the proffered new evidence was admissible, and it was the defendants' burden to authenticate and provide foundation for their proffered new evidence. Consequently, the circuit court did not violate the defendants' procedural due process rights by finding the proffered new evidence to be inadmissible.

¶ 78 The defendants further argue that the circuit court erred by not considering the proffered new evidence where ATU and Local 241 did not object to the admissibility of the evidence or file a motion to strike the evidence. Rather, according to the defendants, the court essentially objected on ATU and Local 241's behalf.

¶ 79 The defendants cite no case law that the circuit court cannot justify its denial of a motion based on reasoning unargued by the opposing party. Nevertheless, to support their argument, the defendants rely on *People v. Wiggins*, 2015 IL App (1st) 133033 and *Hajicek v. Nauvoo Restoration, Inc.*, 2014 IL App (3d) 121013. In *Wiggins*, 2015 IL App (1st) 133033, ¶ 44, during a jury trial, the trial court made two objections on behalf of the State and sustained both objections

as well as completed the State's direct examination of the victim in the case. Additionally, the court referred to the State's redirect examination of the victim as " 'what we just did' " and told the defendant's attorney, in front of the jury, to " 'watch yourself, man.' " *Id.* This court found that the trial court "abandoned his role as neutral arbiter" by raising the objections on the State's behalf and completing the State's examination of the victim. *Id.* This court further found that these actions when interposed with the trial court's various remarks "indicated to the jury a preference for the prosecution." *Id.* ¶ 50. And, as a result of the trial court's conduct, this court found that the defendant was "deprive[d] *** of a fair trial." *Id.* ¶ 53. Nothing like what occurred in *Wiggins* occurred in this case where the circuit court merely used its own reasoning to deny the defendants' motion to reconsider. *Wiggins* is therefore inapposite. Similarly, *Hajicek* is inapposite. *Hajicek*, 2014 IL App (3d) 121013. ¶ 13, involved a plaintiff forfeiting arguments on appeal that he did not make below in attempting to have the circuit court's grant of a motion to reconsider overturned. *Hajicek* does not involve any principle related to a circuit court relying on a reason not argued by an opposing party. We find nothing improper about the circuit court's actions in regard to the defendants' motion to reconsider.

¶ 80    Next, the defendants argue that the circuit court did not consider the proffered new evidence despite using "[e]ven if" language in its order denying the motion to reconsider. As discussed, the court found some of the proffered new evidence lacking in foundation and unauthenticated, but remarked that, "[e]ven if" it could consider the evidence, the evidence failed to advance the defendants' case. The defendants posit that the court "tethered the evidences' alleged inadmissibility to its alternative analysis, thus undermining the court's assertion of viewing the evidence 'even if' it was admissible." As a result, the defendants claim the court erred in not giving the evidence that was presented without objection its full probative effect. First, within this

argument, the defendants cite no case law supporting their argument, meaning we could find the argument forfeited under Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), which "requires parties to cite relevant authority in support of their arguments." *In re Estate of Walsh*, 2012 IL App (2d) 110938, ¶ 37. "[W]hen a party does not offer meaningful authority in support of his argument, that argument is forfeited." *Id.* But beyond this critical deficiency in the defendants' argument, we find no evidence that the circuit court did not give the proffered new evidence its full probative effect within its "[e]ven if" analysis. Consequently, the circuit court did not abuse its discretion in denying the defendants' motion to reconsider.

¶ 81                        3. Summary Judgment on The Defendants' Counterclaims

¶ 82    The defendants next contend that the circuit court erred in granting ATU summary judgment on their counterclaims because it misapprehended the summary judgment standard and there were genuine issues of material fact that should have precluded summary judgment.

¶ 83    Initially, as noted by ATU, because we review the circuit court's ruling on a summary judgment motion *de novo* (see *Carney*, 2016 IL 118984, ¶ 25), the court's alleged misapprehension of the summary judgment standard is irrelevant to our review. See *Morningside North Apartments I, LLC v. 1000 N. LaSalle, LLC*, 2017 IL App (1st) 162274, ¶ 10 ("It is the [circuit] court's judgment and not its reasoning that is on appeal."). We therefore need not address the defendants' various arguments as to how the circuit court allegedly misapprehended the standard for summary judgment and instead, we may just determine if judgment was properly granted.

¶ 84                            i. Breach of Fiduciary Duty Counterclaim

¶ 85    In the defendants' counterclaims, they first raised a claim for breach of fiduciary duty by ATU toward Local 241 based on various actions. And based on those alleged actions, the defendants claimed they were injured when they were suspended from the executive board, fined,

and restricted from participating in future elections. In a breach of fiduciary claim, a counterplaintiff must allege and ultimately prove: "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains." *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 69.

¶ 86     We briefly note that it is not clear that ATU owed a fiduciary duty to Local 241. Concerning the existence of a fiduciary duty, one "exists where there is special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *Kolze v. Fordtran*, 412 Ill. 461, 468 (1952). A fiduciary duty may exist in one of two ways, first as a matter of law such as an attorney-client relationship or a principal-agent relationship. *Ransom v. A.B. Dick Co.*, 289 Ill. App. 3d 663, 672 (1997). Alternatively, one may exist due to "the special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." *Id.* Where the fiduciary duty does not exist as a matter of law, the party asserting its existence must establish the duty by clear and convincing evidence. *Id.* The defendants have never claimed during the litigation that ATU owed Local 241 a fiduciary duty as a matter of law and indeed, in their reply brief, they do not argue as such. While section 501(a) of the Labor-Management Act (29 U.S.C. § 501(a) (2012)) imposes a fiduciary duty upon "officers, agents, shop stewards, and other representatives of a labor organization" to the organization and its members, this is not the same as the labor union itself owing a fiduciary duty to its local affiliate, as the defendants have alleged. Thus, to prove a fiduciary duty existed, the defendants had to put forth evidence that ATU owed Local 241 a fiduciary duty based on the special circumstances of the parties' relationship. See *Ransom*, 289 Ill. App. 3d at 672. But in their counterclaim, the defendants merely alleged in conclusory fashion that a fiduciary duty existed. It is true that, in ATU's motion for summary

judgment, it did not argue for summary judgment based on the lack of a fiduciary duty, although ATU did deny the existence of one in its answer to the defendants' counterclaims. As pointed out by ATU, "an appellee may raise an issue on review that was not presented to the trial court in order to sustain the judgment, as long as the factual basis for the issue was before the trial court.*" DOD Technologies v. Mesirow Insurance Services, Inc.*, 381 Ill. App. 3d 1042, 1050 (2008). We need not decide whether a sufficient factual basis was before the circuit court to decide if ATU owed Local 241 a fiduciary duty. This is because even more problematic for the defendants is that there was no genuine issue of material fact that ATU's alleged breaches of its alleged fiduciary duty to Local 241 did not proximately cause their complained-of injuries.

¶ 87     As discussed, the defendants claimed they were injured when they were suspended from the executive board, fined, and restricted from participating in future elections. This punishment was the result of ATU's general executive board adopting Garland's recommendation based on guilty findings on five of the six charges brought against them. Although the defendants were found guilty of five charges, because the punishments on multiple charges were made concurrent to one another, the only two charges that truly mattered for purposes of their fines, expulsions and suspensions were charges five and six—those involving their acceptance of overpayments and failure to repay the overpayments upon demand by ATU's international president. That is to say, even if ATU owed Local 241 a fiduciary duty and ATU breached that fiduciary duty in the various alleged ways, nothing would absolve the defendants of their obligation to repay the overpayments after the various malfeasance had been uncovered. And even assuming that the defendants were not part of the malfeasance and merely innocent beneficiaries, they still had an obligation to repay the overpayments based on receiving what was not theirs in the first place in light of Garland's findings that were adopted by ATU's general executive board. Indeed, the amount of their fines

were commensurate to the amount of their overpayments. As such, the alleged actions by ATU did not proximately cause the defendants' complained-of injuries. See *Rivera v. Garcia*, 401 Ill. App. 3d 602, 610 (2010) (proximate causation involves two analyses, first, cause-in-fact, and whether there was "reasonable certainty that a wrongdoer's conduct caused the damages involved" and second, the legal cause, and "whether the ultimate injury was reasonably foreseeable"). Although the circuit court did not expressly find that there was no genuine issue of material fact on the issue of proximate causation, the court essentially did so when it found that, despite the myriad of allegations from the defendants, "none of that absolve[d] defendants of their obligation to return the funds after the malfeasance was discovered." In this manner, the court tacitly found that ATU was entitled to summary judgment based, in part, on the lack of proximate causation on the defendants' breach of fiduciary duty counterclaim. See *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 395-96 (2004) ("[T]he lack of proximate cause may be determined by the court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause"). Consequently, the circuit court properly granted ATU summary judgment on the defendants' breach of fiduciary duty counterclaim.

¶ 88                          ii. Breach of Contract Counterclaim

¶ 89    The defendants' second counterclaim was for breach of contract against ATU for failing to follow its written procedures when initiating the charges against them and during the appeals process. In order to establish a breach of contract, the counterplaintiff must prove "the existence of a valid and enforceable contract, performance by the [counter]plaintiff, breach of the contract by the [counter]defendant, and resultant damages or injury to the [counter]plaintiff." *Razor Capital*, 2012 IL App (2d) 110904, ¶ 30. But as discussed concerning ATU and Local 241's breach of contract claim, ATU performed its contractual obligation during the disciplinary process when

it initiated the charges and informed the defendants of their appeal rights. Furthermore, to the extent that the defendants argue on appeal that summary judgment was not appropriate on their breach of contract counterclaim because they were not afforded their right to counsel at the hearing, we note that this allegation was not even present in their breach of contract counterclaim. Their breach of contract counterclaim merely alleged: "Plaintiffs breached the International Constitution and General Laws when it failed to follow its written procedures regarding the initiation of charges against an officer" and when "adhering to the process of appeal." As such, they claimed that ATU "breached the contract regarding the charges and appeals process both substantively and procedurally."

¶ 90    But even if the lack of counsel allegation were presented in their counterclaim for breach of contract, we would find that it has no merit in this litigation. Initially, as the circuit court noted, much of the proof of the amendment to section 12.5 of ATU's constitution was through unauthenticated exhibits presented by the defendants in their motion to reconsider. But let us assume *arguendo* that, in 2013, ATU amended its constitution with regard to an individual's right to counsel during a disciplinary hearing from having the right to be represented by counsel to only having the right to be represented by any member not serving on the trial board, as hearing officer, or on ATU's general executive board. During the beginning of the hearing, the right to counsel undoubtedly arose, initially from Nathaniel Scurlock—who as we noted was a defendant in the case, but not a party to this appeal—who asked "shouldn't we have representation as an attorney, not representing ourselves, as the old constitution states." And in response, Garland replied, "I understand. And your objection will be duly noted." Thereafter, Scurlock asserted his *Weingarten* rights and began arguing that those rights were being violated. Later, an unnamed defendant also stated: "A member asked you was I entitled – or were we entitled to an attorney. And I think the

question he answered was no." The unnamed defendant highlighted section 12.5 from ATU's constitution in 2004 where there was a right to counsel and remarked "[b]ut all we heard him say we weren't entitled to it." And then, in the opening statement of Lonnie Walker—one of the parties to this appeal—he stated the hearing was unfair and unjust based on his *Weingarten* rights

¶ 91   The only defendant that is a party to this appeal who spoke during this discussion of the right to counsel was Walker, and he only referred to his *Weingarten* rights being violated, which as we noted earlier only involve union representation at investigatory interviews. Walker never specifically asserted his right to counsel as it related to ATU's constitution. Simply put, although Garland noted Scurlock's assertion of *his* right to counsel under ATU's constitution, none of the defendants who are parties to this appeal did so, and thus, it cannot be said that they were denied a right they never asserted. As such, ATU did not breach its contract with the defendants. Consequently, there was no genuine issue of material fact on the defendants' breach of contract counterclaim, and the circuit court correctly granted summary judgment to ATU.

¶ 92   The defendants have raised several issues with the motivation behind the charges from ATU, whether the pay raises were condoned or even encouraged by ATU itself, whether the Christmas gratuities were an established past practice that they did not create and whether they even had knowledge of the improper compensation, but none of these issues have particular relevance to the claims raised by ATU and Local 241 in their complaint and the defendants' counterclaims. As the circuit court noted, the crux of the matter was that, following a hearing, the defendants were found to have received improper compensation, and as a result, they were required to return the overcompensation, suspended from the board and barred from holding future office for five years. As we have repeatedly found, the defendants' hearing complied with ATU's constitution, and there can be no doubt that the hearing was also fundamentally fair.

"[D]isciplinary proceedings conducted by voluntary associations do not require strict compliance with judicial standards of due process. Instead, the accused member is entitled to a hearing before 'fair and impartial tribunal.' " *Butler*, 285 Ill. App. 3d at 583 (quoting *Van Daele*, 51 Ill. 2d at 394-95). A fair and impartial tribunal requires sufficient notice of the charges, an opportunity for the accused to defend him or herself, and evidence to be presented in support the charges against the accused. See *id.*

¶ 93    In this case, as demonstrated by the record, the defendants were notified of the charges against them, notified well in advance of when the hearing was scheduled to take place, given an opportunity to present evidence, examine and cross-examine witnesses, and given an opportunity to defend themselves against the charges. The disciplinary process conducted by ATU conformed with the requirements of due process for an unincorporated association, a conclusion that four tribunals have now found: the International Convention on appeal, the United States Department of Labor, the circuit court and now this court. The defendants attempt to frame the issues of the motivation behind the charges from ATU, whether the pay raises were condoned or even encouraged by ATU itself, whether the Christmas gratuities was an established past practice that they did not create and whether they even had knowledge of the alleged improprieties as fraud and collusion. But the bottom line is that, once ATU's general executive board adopted Garland's findings and recommendations and they were upheld on appeal, the defendants were obligated to pay their penalties, which were the exact amounts of their overpayments. Nothing about a fundamentally fair hearing that complied with ATU's constitution, in which a hearing officer found the defendants had been improperly overcompensated raises concerns about fraud and collusion. And therefore, the circuit court correctly decided all of the dispositive motions in this case.

¶ 94                                         B. Discovery Issues

¶ 95    We now turn to the discovery issues raised by the defendants. The circuit court is given "great latitude in rulings on discovery matters" (*D.C. v. S.A.*, 178 Ill. 2d 551, 559 (1997)), and generally, orders concerning discovery issues will not be reversed absent an abuse of discretion. *Wisniewski v. Kownacki*, 221 Ill. 2d 453, 457 (2006). However, in this case, after denying the defendants' motion to reconsider and granting ATU's motion for summary judgment on the defendants' counterclaims, the circuit court found all pending motions, most of which involved discovery issues, moot. Thus, for most of the defendants' discovery-related claims of error, there are no rulings to actually review with deference.

¶ 96                    1. Court's Failure to Stay Ruling on Dispositive Motions

¶ 97    We begin with the defendants' first discovery-related claim of error that the circuit court erred when it failed to stay its ruling on ATU and Local 241's motions for summary judgment until more discovery had been completed. The defendants posit that this allowed ATU to stonewall its responses to discovery and then materially benefit from their alleged discovery abuses when the court disposed of the summary judgment motions without all discovery having been completed. As noted by ATU, the defendants never filed a motion to stay the briefing on its and Local 241's motions for summary judgment on their complaint's claims. Had the defendants done so, there would have been a ruling from the circuit court to review. But because they did not file such a motion, there is no ruling that we can review with regard to this claim. And as such, it is axiomatic that we cannot find the court erred based on a nonexistent ruling and an unsupported legal claim that the court should have *sua sponte* stayed its ruling.

¶ 98    Additionally, as noted by ATU, there is mechanism for parties opposing a motion for summary judgment when that party is allegedly missing critical discovery: Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013). According to Rule 191(b):

> "If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing documents in the possession of those persons or furnishing sworn copies thereof. The interrogatories and sworn answers thereto, depositions so taken, and sworn copies of documents so furnished, shall be considered with the affidavits in passing upon the motion." *Id.*

¶ 99    Rule 191(b) "provide[s] an avenue of relief for defendants *** who contend that crucial evidence necessary to oppose the motion is in the hands of the movant or other adverse parties, who have not responded to a discovery request for that evidence." *Parkway Bank & Triust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 47. Rule 191(b) exists, in part, because the Code of Civil Procedure allows a plaintiff and defendant to move for summary judgment early in the proceedings. See 735 ILCS 5/2-1005 (West 2016). For a plaintiff, it may move for summary judgment any time after the defendant has made an appearance or the time with which the defendant was required to appear has expired. 735 ILCS 5/2-1005(a) (West 2016). For a defendant, it may move for summary judgment "at any time." 735 ILCS 5/2-1005(b) (West 2016). As such, it is incumbent upon the nonmoving party to rely on Rule 191(b) if it needs to conduct discovery or additional discovery in conjunction with responding to a motion for summary judgment. "A party who fails to follow the procedures set out in Rule 191(b) until after summary judgment is granted cannot complain of an inability to conduct discovery before summary judgment was

ordered." *Rush v. Simon & Mazian, Inc.*, 159 Ill. App. 3d 1081, 1085 (1987); see also *Korzen*, 2013 IL App (1st) 130380, ¶ 48 ("Parties who fail to file Rule 191(b) affidavits cannot complain that the 'discovery process was insufficient or limited.' ") (quoting *Kane v. Motorola, Inc.*, 335 Ill. App. 3d 214, 225 (2002)). Indeed, the nonmoving party's obligation to follow Rule 191(b) still holds even if that party has discovery requests outstanding or the moving party has failed to timely comply with the nonmoving party's discovery requests. See *Wooding v. L & J Press Corp.*, 99 Ill. App. 3d 382, 387 (1981) (rejecting the nonmoving party's attempt to "rely upon [the moving party's] tactic of failing to comply with discovery as an excuse for her own failure to comply with Rule 191").

¶ 100   In this case, the defendants did not file a Rule 191(b) affidavit before the circuit court entered summary judgment in favor of ATU and Local 241 on their claims. They therefore cannot complain of their inability to conduct further discovery before the circuit court entered summary judgment in favor of ATU and Local 241. See *Korzen*, 2013 IL App (1st) 130380, ¶ 48; *Rush*, 159 Ill. App. 3d at 1085. These facts make the cases relied upon by the defendants distinguishable. In *Dobbs v. Safeway Ins. Co.*, 66 Ill. App. 3d 400, 401-03 (1978), the appellate court found the circuit court abused its discretion when it denied a plaintiff's request to vacate an order granting summary judgment for the defendant so that the plaintiff could have additional time to conduct discovery. Here, as noted, the defendants never requested the circuit court stay ruling on ATU and Local 241's motions for summary judgment on their claims. Furthermore, in *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶ 30, the appellate court excused a plaintiff from strict compliance with Rule 191(b) under the circumstances of the case because the defendants had filed

a *Celotex*-type motion for summary judgment.[3] But in that case, the plaintiff did file a Rule 191(b) affidavit, but the affidavit simply was not in strict compliance with the rule. *Id.* ¶¶ 11, 30. Here, as noted, the defendants never filed any Rule 191(b) affidavit in conjunction with their response to ATU and Local 241's motions for summary judgment on their claims.

¶ 101   The first time the defendants mentioned Rule 191(b) was in conjunction with their motion to reconsider—on January 13, 2020, three months after they responded to ATU and Local 241's motion for summary judgment on their claims and two weeks before the circuit court ruled on the remaining motions. In that motion to reconsider, the defendants included an affidavit titled "Illinois Supreme Court Rule 191(b) Affidavit of Michael Taylor," wherein Taylor requested the circuit court stay judgment on the pending motions—at that time, the defendants' motion to reconsider and ATU's motion for summary judgment on the defendants' counterclaims—until the transcripts from the depositions of Tyler Home and Javier Perez were available and until the affidavit of Marvella Singleton was obtained. Similarly, three days before that, the defendants made a request to extend fact discovery, and enter and continue the pending dispositive motions until discovery was complete as part of their motion to compel. Although the court did not specifically address these requests, we find no error by the court in not allowing the additional discovery. As it relates to the defendants' motion to reconsider, there were no genuine issues of material facts as it related to ATU and Local 241's summary judgment on their breach of contract claims, and as such, additional discovery would not have produced anything to change their entitlement to summary judgment as a matter of law. Similarly, there were no genuine issues of material facts as it related

---

[3] A *Celotex*-type motion for summary judgment, which derives its name from *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), refers to a motion for summary judgment where the moving party asserts that the nonmoving party's evidence is insufficient to avoid judgment as a matter of law. *Jiotis*, 2014 IL App (2d) 121293, ¶ 25.

to ATU's motion for summary judgment on the defendants' breach of contract and breach of fiduciary duty counterclaims, and as such, additional discovery would not have produced anything to change ATU's entitlement to summary judgment as a matter of law. We reiterate that, once ATU's general executive board adopted Garland's findings and recommendations and they were upheld on appeal, the defendants were obligated to pay their penalties. Nothing about conducting additional discovery would have changed the fact that these defendants were required to repay their overcompensation—a fine imposed following a hearing that four different tribunals have found was fundamentally fair and where ATU followed its constitution. Because of this fact, the present case is unlike either *Jiotis*, 2014 IL App (2d) 121293 or *Dobbs*, 66 Ill. App. 3d. And consequently, the circuit court did not error when it failed to stay its rulings on ATU and Local 241's motions for summary judgment until more discovery had been completed.

¶ 102                    2. Circuit Court Denying Motion To Compel as Moot

¶ 103   The defendants next argue that the circuit court erred when found as moot their motion to compel documents and their request for an evidentiary hearing that was filed in January 2020. As discussed above, by this point in the litigation, there was no genuine issue of material fact on ATU and Local 241's breach of contract claims and the defendants' breach of contract and breach of fiduciary duty counterclaims. "An issue is moot when its resolution could not have any practical effect on the existing controversy." *LaSalle National Bank, N.A. v. City of Lake Forest*, 297 Ill. App. 3d 36, 43 (1998). Stated otherwise, "if an actual controversy no longer exists between the parties and the interests and rights of the parties are no longer in controversy," the issue is moot. *Id.* No amount of additional discovery would have changed the conclusions that there was no genuine issue of material fact on ATU and Local 241's breach of contract claims and the defendants' breach of contract and breach of fiduciary duty counterclaims. Consequently, the

circuit court did not error when it found as moot the defendants' motion to compel documents and their request for an evidentiary hearing.

¶ 104                          3. Circuit Court Denying Motion To Supplement as Moot

¶ 105   The defendants next argue that the circuit court erred when it found as moot their motion to supplement the record with evidence referenced in Taylor's Rule 191(b) affidavit. The defendants posit the evidence contained in Home and Perez's depositions as well as Singleton's affidavit would have shown there were genuine issues of material facts about whether ATU properly charged them and whether the hearing was conducted fairly. As noted previously, judicial review of union proceedings is narrow. "[C]ourts in the absence of circumstances of unfairness will not intervene in questions involving the enforcement of bylaws and matters of discipline in voluntary associations." *La Jeunesse*, 63 Ill. 2d at 268. To this end, "[j]udicial review is limited to whether an exercise of power by the association conformed with its own internal rules or whether an association violated a member's fundamental right to a fair hearing" (*Diamond*, 329 Ill. App. 3d at 525), or if there was "mistake, fraud, collusion or arbitrariness" in the process. *Poris*, 2013 IL 113907, ¶ 31.

¶ 106   The issues raised by the Home and Perez's depositions as well as Singleton's affidavit simply do not show any genuine issue of material fact about whether ATU followed its constitution in disciplining the defendants nor does it show that their hearing was unfair. In Home's deposition, he discussed details related to Rodney Richmond, who the defendants have alleged told them to implement the pay structure they were later charged and fined for implementing. In Perez's deposition, he discussed William Foley and alleged misconduct that he committed as a trustee and the attempted raid of Local 241 by the International Brotherhood of Teamsters. And in Singleton's affidavit, she discussed that the Christmas gratuities were standard practice while she worked for

Local 241 and had been approved by a general membership vote. She also discussed Foley and his alleged misconduct as well as documents being shredded by Local 241 when they moved offices.

¶ 107 Fairness of disciplinary proceedings conducted by unincorporated associations require only sufficient notice of the charges, the accused's opportunity to defend him or herself and some evidence be presented to support the alleged charges. *Butler*, 285 Ill. App. 3d at 583. This undoubtedly occurred in this case notwithstanding the evidence presented in Home and Perez's depositions as well as Singleton's affidavit, a conclusion we reiterate that has been made by not only this court, but multiple other tribunals. And likewise this evidence does not show there was "mistake, fraud, collusion or arbitrariness" in the process (*Poris*, 2013 IL 113907, ¶ 31) where, following a fundamentally fair hearing, the defendants were fined an amount they refused to pay back based on being overcompensated. All of the evidence and resulting issues that the defendants wanted the circuit court to consider go far beyond what our case law allows in terms of judicial review of union disciplinary proceedings. Consequently, the circuit court did not error when it found as moot the defendants' motion to supplement the record. See *LaSalle National*, 297 Ill. App. 3d at 43.

¶ 108                     4. Privileges During Garland's Deposition

¶ 109 The defendants next argue that the circuit court improperly allowed Garland, the hearing officer, to assert the attorney-client and deliberative process privilege during his deposition. Following the deposition, the defendants filed a motion to compel responses to those questions, a motion the court ultimately found as moot. First, we examine Garland's (by way of ATU's attorney) invocation of the attorney-client privilege. In arguing that Garland improperly invoked the attorney-client privilege, the defendants frame the issue as referencing Garland's communications with Daniel Smith, ATU's assistant general counsel, during the September 2014

hearing. Smith also represented ATU during Garland's deposition, and a close reading of the deposition reveals that the defendants' attorney asked Garland about his conversations with Smith in preparation for the deposition.

¶ 110   At Garland's deposition, he testified that he was currently ATU's international vice president. Early in the deposition, the defendants' attorney asked Garland "if [he] spoke with anybody in preparation for this deposition" to which Garland answered affirmatively and noted it was Smith. The defendants' attorney then asked Garland who he believed Smith was representing at the deposition to which Garland responded that it was his "understanding that Mr. Smith [was] representing the ATU." The defendants' attorney subsequently asked: "So what did Mr. Smith ask you or talk to you about?" At this point, both Smith and another attorney for ATU objected based on the attorney-client privilege. This questioning makes it clear that the defendants' attorney was asking Garland about the conversation he had with Smith in preparation for the deposition, *not* any specific conversations they had regarding the 2014 hearing.

¶ 111   "Where legal advice of any kind is sought from a lawyer in his or her capacity as a lawyer, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by the client or lawyer, unless the protection is waived." *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 30. The attorney-client privilege is critical to the proper functioning of the judicial system because it promotes and encourages candid conversations between a lawyer and his client by eliminating the fear that the disclosure of those communications could be compelled. *Id.* ¶¶ 30-31. Illinois has "a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit." *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 190 (1991). As such, because the privilege bars discovery to "relevant and material facts it is an exception to the

general duty to disclose and is interpreted narrowly." *Adler v. Greenfield*, 2013 IL App (1st) 121066, ¶ 41. To determine whether an employee's conversation with an attorney is protected within the corporate setting, Illinois uses the control-group test. *Claxton v. Thackston*, 201 Ill. App. 3d 232, 235 (1990). "Under the control-group test, there are two tiers of corporate employees whose communications with the corporation's attorney are protected. The first tier consists of the decision-makers, or top management. The second tier consists of those employees who directly advise top management, and upon whose opinions and advice the decision-makers rely." *Mlynarski v. Rush Presbyterian-St. Luke's Medical Center*, 213 Ill. App. 3d 427, 431 (1991).

¶ 112   The circuit court did not address the attorney-client privilege issue specifically because it ultimately found all pending motions were moot when it denied the defendants' motion to reconsider and granted summary judgment to ATU on the defendants' counterclaims. The defendants have not cited any case law showing the control-group test is applicable for unincorporated associations, which unions constitute. See *1550 MP Road*, 2019 IL 123046, ¶ 25. But assuming *arguendo* that the control-group test does apply, Garland testified that he was ATU's international vice president at the time of his deposition, and he invoked the attorney-client privilege in regard to his conversations with Smith, one of ATU's attorneys, in preparation for the deposition. We fail to see how Garland, ATU's international vice president, would not constitute a decision-maker or top management of ATU for purposes of the control-group test. See *Mlynarski*, 213 Ill. App. 3d at 431. Consequently, because the defendants only argue that Garland could not invoke the attorney-client privilege based on the control-group test, we find that, to the extent the test would apply under the circumstances of this case, he properly invoked the privilege.

¶ 113   We next turn to the defendants' argument over Garland invoking the deliberative process privilege. In December 2019, the circuit court entered a briefing schedule on ATU's motion for

summary judgment on the defendants' counterclaims and the defendants' motion to reconsider. As part of the order, the court stated that the deposition of Garland was to proceed "keeping in mind 'deliberative privilege.' " And so, during Garland's deposition, he invoked the privilege multiple times. In total, Garland invoked the privilege in response to: (1) a question about who at ATU gave him advice on how to conduct the defendants' hearing; (2) a question about if anyone reviewed his report detailing his findings and recommendations before he issued it; (3) a question concerning what weight Garland gave to a document that purportedly referenced William Foley and Zero Access; (4) a question about whether Garland deferred to Smith's "knowledge of legal proceedings and knowledge of the law" during the hearing; (5) a question concerning why Gus Stevens was found guilty of malfeasance despite the fact he was not a member of the executive board when the allegedly improper compensation was voted on; (6) a question about who instructed Garland on the recommendations to make; and (7) a question concerning how he decided to impose each fine upon each member. The defendants also claim on appeal that Garland refused to answer other questions by asserting the deliberative process privilege, but that is not true.

¶ 114    In another question, the defendants' attorney asked Garland about whether he voted for the president of ATU, who was the person who had appointed him as hearing officer. However, one of ATU's attorneys objected to this question based on relevance, not the deliberative process privilege and the other ATU attorney noted the election was "secret" under Labor-Management Act (29 U.S.C. §§ 401-531 (2012)). In another question, the defendants' attorney asked Garland about his compensation from ATU to which ATU's attorney objected again based on relevancy grounds. Furthermore, in two questions, although ATU's attorney objected based on the deliberative process privilege, Garland did in fact answer the questions. When the defendants' attorney questioned Garland about whether he found it "strange" that ATU did not produce

minutes from a meeting where the vote to allegedly improperly increase pay occurred, Garland answered that he "did not" before ATU's attorney could object. Similarly, when the defendants' attorney asked Garland why there was a "three-year delay in bringing charges against" the defendants, at first ATU's attorney objected based on deliberative process privilege. But the defendants' attorney asked the same question mere moments later to which Garland responded that he "did not" know why there was a delay in bringing the charges against the defendants.

¶ 115   With the questions that Garland did actually invoke the deliberative process privilege clarified, we note that such a privilege exists in federal court. *People ex rel. Birkett v. City of Chicago*, 184 Ill. 2d 521, 526 (1998). The privilege developed to encompass " 'intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.' " *Id.* (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966), *aff'd*, 384 F.2d 979 (D.C. Cir. 1967)). The purpose of the federal privilege is to encourage "the frank exchange of advice and opinions in the course of governmental decisionmaking and policymaking." *Id.* at 527. In Illinois, there is a deliberative process clause contained in the Freedom of Information Act, which exempts "[p]reliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated" from disclosure. 5 ILCS 140/7(1)(f) (West 2016); see *Day v. City of Chicago*, 388 Ill. App. 3d 70, 79 (2009) (noting that section 7(1)(f) of the Freedom of Information Act is equivalent to the federal deliberative process privilege). But, in *People ex rel. Birkett*, 184 Ill. 2d at 533, when our supreme court was asked to adopt a deliberative process privilege for parties in litigation generally, the court declined to do so.

¶ 116   However, in *Thomas v. Page*, 361 Ill. App. 3d 484, 491 (2005), this court concluded that "there exists a judicial deliberation privilege protecting confidential communications between

judges and between judge's and the court's staff made in the performance of their official duties and relating to official court business." Despite the existence of the judicial deliberation privilege, privileges in general "are strongly disfavored because they operate to 'exclude relevant evidence and thus work against the truthseeking function of legal proceedings.' " *People ex rel. Birkett*, 184 Ill. 2d at 527 (quoting *People v. Sanders*, 99 Ill. 2d 262, 270 (1983)). And indeed, our supreme court has consistently held that "the extension of an existing privilege or establishment of a new one is a matter best deferred to the legislature." *Id.* at 528. As such, although the judicial deliberation privilege exists, we cannot extend the privilege to cover the deliberations of Garland in this case. See *Fox Moraine, LLC v. United City of Yorkville*, 2011 IL App (2d) 100017, ¶ 72 (declining to extend the judicial deliberation privilege from *Thomas* to bodies "acting in a quasi-judicial and quasi-legislative role").

¶ 117    Yet, this court has also noted that circuit courts "should be hesitant to allow discovery of arbitral processes," and it is generally improper to allow parties to "delve[] into the arbitrators' deliberation process." *Hawrelak v. Marine Bank, Springfield*, 316 Ill. App. 3d 175, 182 (2000). In *Hawrelak*, the employment agreement of a bank president mandated arbitration for any compensation disputes that arose after his termination. *Id.* at 177. After the president resigned from the bank, he submitted multiple compensation issues for arbitration. *Id.* A three-member arbitration panel heard the case, reached a majority decision on all of the issues presented and then, the American Arbitration Association fully incorporated the majority decision and issued the final award. *Id.* at 177-78. The former bank president was unhappy with the award and sought to vacate it on various grounds in the circuit court. *Id.* at 178. As part of the discovery in the litigation, the circuit court granted the former bank president's request to conduct limited discovery of some issues that arose after the arbitration proceeding, including any contacts that may have occurred

between the arbitrators and the parties, and the early release of the arbitration decision to the bank. *Id.* To this end, the former bank president deposed two of the three arbitrators while the bank deposed the third arbitrator. *Id.* All three were asked about the contacts that may have occurred between them and the parties, the early release of the arbitration decision and "the arbitral deliberation process." *Id.* Ultimately, based on the premature release of the arbitration decision, the circuit court vacated the entire arbitration award and remanded the matter for a new arbitration hearing. *Id.* On appeal, however, the appellate court noted the limits of judicial review of arbitration awards because, when parties agree to arbitration, they agree to the "warts" of arbitration and "the arbitration panel's view of the facts and interpretation of the [employment agreement]." *Id.* at 181. And, to this end, this court found no basis to disturb the arbitration award. After reaching this holding, this court cautioned circuit courts from allowing "any discovery of arbitral processes." *Id.* at 182.

¶ 118   One could argue that the arbitration proceeding discussed in *Hawrelak* is very much like the union disciplinary proceeding that occurred in this case. Just like where an employee and employer agree to arbitrate disputes as part of an employment agreement, union members and their unions agree to conduct internal disciplinary hearings for allegations of malfeasance as part of their membership in the union. And so, like the appellate court in *Hawrelak* cautioned circuit courts about allowing discovery into the arbitral deliberation process, it is arguable that circuit courts should likewise be hesitant to allow discovery into the deliberation process of a union hearing officer.

¶ 119   In the present case, the circuit court allowed Garland's deposition to proceed "keeping in mind 'deliberative privilege.' " According to the defendants, ATU raised the applicability of the deliberative process privilege during a status hearing without a motion or supporting case law. We

do not have a transcript from that status hearing, so we do not know in what context ATU raised the applicability of the deliberative process privilege. In turn, it is unclear what specific " 'deliberative privilege' " the court was referencing in its order, but it is possible that the court was cautioning the parties similar to what the appellate court did in *Hawrelak*. Regardless of what exactly the circuit court meant with regard to the " 'deliberative privilege,' " we find any alleged error with regard to this privilege and the subsequent finding of mootness of the defendants' motion to compel Garland to answer the questions in which he invoked the deliberative process privilege to be harmless. See *Hadley v. Snyder*, 335 Ill. App. 3d 347, 351-52 (2002) (finding that any error by the circuit court in denying a motion to compel "was harmless because the documents [the plaintiff] sought would not have affected the outcome of his case"). Here, too, any order compelling Garland to answer these questions would not have affected the outcome of the case because his potential answers would not have impacted the elements of ATU and Local 241's breach of contract claims or the defendants' breach of contract and breach of fiduciary duty counterclaims for the various reasons we have already explained herein.

¶ 120                                         III. CONCLUSION

¶ 121   For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 122   Affirmed.